Charles C. McAMIS and Local 348, Oil Workers International Union, CIO, Plaintiffs-Respondents,

v.

PANHANDLE EASTERN PIPE LINE COMPANY, a corporation, Defendant-Appellant.

No. 22090.

Kansas City Court of Appeals.

Missouri.

Dec. 6, 1954.

Albert Thomson, Russell Voertman, Davis, Thomson, VanDyke & Fairchield, Kansas City, for defendant-appellant.

Harry C. Clark, Kansas City, for plaintiffs-respondents.

SPERRY, Commissioner.

This suit was instituted by Local 348 Oil Workers International Union and Charles C. McAmis, a member of the Union, plaintiffs, to compel Panhandle Eastern Pipe Line Company, a corporation, defendant, to comply with the terms and conditions of an award rendered by a board of arbitrators in a labor dispute between plaintiffs and defendant. Judgment was for plaintiffs and defendant has appealed.

Defendant was engaged in the interstate transportation and sale of natural gas. Defendant and plaintiff Union were operating under a collective bargaining agreement which provided for voluntary arbitration of labor disputes, including discharge of any employee to which the Union might except, such disputes to be submitted to the American Arbitration Association. During the month of May, 1952, some of defendant's employees, including McAmis, were on strike. While the strike was in progress some, who were not on strike, were permanently "upgraded" to positions formerly held by strikers. The position of McAmis was so filled. When the strike ended the strikers were rehired but some, including McAmis, were given lower classifications than they had formerly enjoyed.

Shortly after the strikers returned to work, McAmis and another former employee of defendant drove to defendant's compressor station at Liberal, Kansas, and there accosted Mr. Clawson, a fellow employee who had not been on strike and who had been "upgraded" while the strike was in progress. Based on the events occurring there, and immediately thereafter, defendant discharged McAmis, giving as its reason therefor: "Conduct detrimental to efficiency of operation and prejudicial to harmony among employees,

including threats of violence to fellow employees in connection with their employment."

Under the provisions of Article V of the bargaining agreement the Union took exception to defendant's action, filed a "grievance," and requested that McAmis be reinstated. The grievance alleged as follows:

"Mr. E. R. Thomas, Chief Engineer, at the Liberal Compressor Station, unjustly discharged Charles C. McAmis, for reasons not justified by contract terms, Mr. Charles C. McAmis was a good worker and a good workman, we believe that Mr. E. R. Thomas has discriminated against Mr. Charles C. McAmis, because of Union activity.

"Mr. Charles C. McAmis did not threaten bodily injury to an Employee of Panhandle Eastern Pipeline Company, and that Mr. E. R. Thomas's charge is untrue and that Mr. E. R. Thomas violates Article XIX and has unjustly discharged Charles C. McAmis, according to Article V, Section 8(a) and Mr. Charles C. McAmis should be reinstated with all rights and Benefits retroactive to the date of discharge."

The above articles and sections refer to those of the bargaining agreement.

Article XIX provides broadly against discrimination of any kind, and Article V, Section 8(a) provides the method whereby an employee may file and prosecute a grievance.

The grievance was processed through various stages and was finally submitted for arbitration, as provided in the agreement.

A board of three arbitrators (hereafter referred to as arbitrators), was duly authorized to hear the dispute. Before the hearing was had the Union formally complained to the N.L.R.B., hereafter referred to as Board, that defendant was guilty of an unfair labor practice in the discharge of McAmis, stating that his discharge was "for no other reason than his membership in and activities in behalf of the undersigned labor organization * * *." Defendant, at the hearing, contended that the arbitrators had lost their power to hear and determine the matter because they could not issue a binding order on the Board. Plaintiffs contended that, in filing said charge with the Board, they had not waived their contractual right to have arbitrators hear and make an award on the "grievance," even though the above complaint was also pending before the Board.

In determining that they had jurisdiction to hear and determine the matter, the arbitrators declared that the bargaining contract was entered into with knowledge of both parties regarding the laws and procedures of the Board and knowledge that matters within the scope of the contract and subject to arbitration, would also be within the jurisdiction of the Board; that the parties so intended; and that each of the parties agreed, by the bargaining contract, to " 'abide by the award, subject to such rules and regulations as any Federal agency having jurisdiction may impose.' "

The arbitrators found, from the evidence, that McAmis had been guilty of misconduct such as to justify disciplinary action, but that his outright discharge was unjust. The award was to the effect that McAmis be restored to employment without back pay.

Defendant refused to comply with the terms of the award and plaintiffs instituted this action. Defendant challenged the jurisdiction of the Circuit Court on the ground that the Board has exclusive jurisdiction thereof, because the question of discrimination on account of McAmis' union activities was involved. Before final judgment was rendered herein the charge filed with the Board was, by the Board, dismissed. The question of jurisdiction is the only ground here urged for reversal.

Section 158(a) (3), 29 U.S.C.A., as amended, provides that it shall be an unfair labor practice for an employer " * * * by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any *labor organization*." (Emphasis ours.)

Section 160(a), 29 U.S.C.A., as amended by Act June 25, 1948, provides: "The Board is empowered, as hereinafter provided, to prevent any person from engaging in any unfair labor practice (listed in section 158 of this title) affecting commerce. This power shall not be affected by any other means of adjustment or prevention that has been or may be established by *agreement*, law, or otherwise". (Emphasis ours.)··

At the time this controversy arose and when this cause·was heard and submitted to ʻthe Circuit Court, there had been no United States Supreme Court determination of the question whether or not labor disputes·based on unfair labor practices are within the *exclusive* jurisdiction of N.L.R.B. This judgment was rendered on ʼNovember 20, 1953 and, on December 14, 1953, the United States Supreme Court handed down its decision in Garner v. Teamsters, Chauffeurs and Helpers Local Union No. 776 (A.F.L.), 346 U.S. 485, 74 S.Ct. 161.

That case was one involving Union picketing of an employer's business, the object being to coerce the employees to join said union. It was held to be an unfair labor practice and the court said, 74 S.Ct. loc. cit. 165:

"Congress did not merely lay down a substantive rule of law to be enforced by any tribunal competent to apply law generally to the parties. It went on to confide primary interpretation and application of its rules to a specific and specially constituted tribunal and prescribed a particular procedure for investigation, complaint and notice, and hearing and decision, including judicial relief pending a final administrative order."

The court further said, 74 S.Ct. loc.cit. 171:

"On the basis of the allegations, the petitioners could have presented this grievance to the National Labor Relations Board. * * * We think the grievance was not subject to litigation in the tribunals of the State."

. In Capital Service, Inc., v. National Labor Relations Board, 347 U.S. 501, 74 S.Ct. 699, plaintiff charged an unfair labor practice. The court said, 74 S.Ct. at page 702:

"The case is here on a petition for a writ of certiorari limited to the following question:

" ' "In view of the fact· that exclusive jurisdiction over the subject matter was in the National Labor Relations Board, [citing the Garner case] could the Federal District Court, on application of the Board, enjoin ʼPetitioners from enforcing an injunction already obtained from the State court?" ' " The court answered the question in the affirmative.

On June 14, 1954, the Supreme Court of. Missouri handed down a decision in the case of Cooper Transport Company, Inc., v. Stufflebeam, —— S.W.2d ——. The Union had been enjoined by a State court from picketing in an effort to coerce the employer into agreeing that it would discharge such of its employees as, after thirty days of employment, failed to join the Union. The court held this to be an unfair labor practice .which, under the Garner decision, supra, was within the exclusive jurisdiction of N.L.R.B.

■ It is clear, therefore, that labor disputes based on charges of discrimination because of *union* activities are within the exclusive jurisdiction of N.L.R.B., and are not subject to adjudication by State courts.

However, plaintiffs· contend that the instant case is not one wherein the real or sole issue is an unfair labor practice as above defined. They say that the real issue was whether or not McAmis was guilty of misconduct as claimed by defendant. .

■ The arbitration proceedings, which culminated in the award upon which this action is based, were instituted by plaintiffs when they filed their "grievance." See Arbitration of Labor Disputes, Updegraff and McCoy, page 94. The "grievance" alleged a violation of Article XIX (which prohibits coercion, intimidation, or discrimination against an employee by Employer or Union) and specified that . the

particular discrimination complained of was based on McAmis' union activities. That charge was one which is not the subject of adjustment by arbitration under a private contract or agreement, because of the provisions of N.L.R.M.A., as construed by the United States Supreme Court in the Garner and Capital Service cases. Cooper Transport Company, Inc., v. Stufflebeam, supra. It charged an unfair labor practice and jurisdiction is in N.L.R.B. "Clearly, agreements between private parties cannot restrict the jurisdiction of the Board." National Labor Relations Board v. Walt Disney Productions, 9 Cir., 146 F.2d 44, 48.

However, the "grievance" filed with the arbitrators, unlike that later filed with the Board, and by it dismissed, did not allege that the *sole* reason for his discharge was McAmis' union activities, but plaintiffs also declared that McAmis had been unjustly discharged although he was a good worker and had not threatened a fellow employee with bodily harm. Thus, plaintiffs challenged the truth of defendant's charge of misconduct, the sole ground given for discharge, and also, in effect, challenged the justness of the discharge, even if he had been guilty of *some* misconduct, but not of sufficient gravity to justify discharge.

It appears, therefore, that the "grievance" before the arbitrators charged that McAmis had been *unjustly* discharged for three reasons, to-wit: (a) Because he was a good worker and did not threaten any employee of defendant with bodily harm; (b), because, if guilty of misconduct, it was not such as to justify discharge; and, (c) because of union activity. The first two raised questions within the power of the arbitrators to decide. Defendant does not contend that, had these been the only issues submitted, there would have been any jurisdictional question here involved.

The evidence before the arbitrators appears to have been directed to the question of whether McAmis threatened Clawson with bodily harm, as charged by defendant in discharging him. Neither party seems to have offered evidence on any other issue, and the arbitrators made no finding concerning same; but they did find that the evidence failed to establish that McAmis had threatened bodily harm.

Thus, we have a bargaining agreement between a labor union and an employer whereby they have agreed to arbitrate disputes involving unfair labor practices as well as those involving discharges based upon other grounds. The agreement, insofar as it relates to arbitration of disputes involving unfair labor practices, is inoperative and of no effect; but, as to many other grounds of labor-management disputes, it is binding. This is true because Congress did not seek to make all labor disputes subject to the exclusive jurisdiction of N.L.R.B. Anheuser-Busch, Inc., v. Weber, Mo., 265 S.W.2d 325, 333. If plaintiffs had not charged an unfair labor practice, but had merely charged an unjust discharge based on misconduct, there would be no question of the validity of this award, so far as the record before us is concerned. Were the arbitrators, then, powerless to act upon a matter otherwise within their jurisdiction simply because plaintiffs also charged, in the same "grievance," and in a separate grievance filed with N.L.R.B., discrimination based on union activity?

There are no decisions, Federal or State, that have come to our attention, which clearly mark the way for us to follow in disposing of this question. However, as a general rule, public policy favors the negotiation of collective bargaining agreements, or contracts, fixing conditions of employment between labor and management. And the enlightened view is that the best interests of labor, management, and the public will best be served by arbitration of such disputes as may arise under bargaining agreements except in such cases as may be excepted by legislative enactment. That is the policy which is emerging in this extremely important, comparatively new, and developing field of the law.

In the public interest, and by the very terms of the bargaining agreement itself, that instrument may not be declared

*wholly* void and inoperative merely because its provisions are broad enough to include therein as subjects of arbitration complaints based on unfair labor practices; nor would such a course be justifiable in logic or justice. It would appear to be equally unjustifiable to hold that a board of arbitrators, duly convened under that agreement, are shorn of all authority to proceed in a dispute on charges included therein that are clearly within its jurisdiction, merely because plaintiffs also sought to have it adjudge other charges clearly beyond its jurisdiction.

To follow defendant's theory would be to embrace the doctrine that an employee who has been discharged on charges wholly unfounded in fact, cannot have that matter adjudged except by resort to N.L.R.B., if he also wishes to press a charge of discrimination because of union activities. Such a course by our courts would be to fatally cripple the oldest known method of settlement of disputes between men. An employee should be entitled to assert both defenses to his claimed unlawful discharge, the one in the forum agreed upon by himself and his employer—the other in the forum designated by Congress. There is nothing inconsistent in such a course, nor can there be any conflict of jurisdiction or authority, the reason given in the Garner case for the rule of exclusive jurisdiction.

We conclude that the facts in this case, make the rule of the Garner case inapplicable here because, in that case, the *sole* question involved was that of an unfair labor practice.

The judgment should be affirmed.

BOUR, C., concurs.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The judgment is affirmed.

All concur.