Post Publishing Company *vs.* John C. Cort & others.

Suffolk.    March 8, 1956. — May 14, 1956.

Present: Qua, C.J., Ronan, Wilkins, Counihan, & Whittemore, JJ.

*Arbitration. Equity Jurisdiction,* Arbitration. *Labor. Contract,* For arbitration, Of employment. *Jurisdiction,* Labor.

After the making of an agreement between a newspaper publisher and a union representing his employees providing in one of its articles for reference of "grievances or disputes arising from the application of this agreement" to a joint committee for a "final and binding" majority decision or, in the event of failure to reach such a decision, for arbitration by an arbitration association, and for reference to such a committee of the "matter" of employees alleging "discrimination or unjust treatment," there was no occasion for enjoining the pursuance of such procedures in instances of discharged employees involving determinations whether their complaints, that their discharges ostensibly for reasons of economy were really for other reasons, fell within the scope of the agreement and, if so, whether their discharges were actually without just cause. [203]

Arbitration of a dispute between an employer and his employees in accordance with an arbitration procedure provided for in an agreement between the employer and a labor union constituting the bargaining agent for the employees should not be enjoined on the ground that an unfair labor practice was involved over which the national labor relations board might have jurisdiction. [204–205]

BILL IN EQUITY, filed in the Superior Court on February 9, 1955.

The suit was heard by *Nagle*, J.

*Alfred C. Blake*, for the plaintiff.

*Sidney S. Grant*, for the defendants.

WILKINS, J. The plaintiff, a newspaper publisher, brings this bill in equity against the executive secretary and the president of Newspaper Guild of Boston, a voluntary unincorporated association, and its other members, who are fairly represented by those officers, and American Arbitration Association, a corporation, which is a nonprofit organization providing facilities for arbitration of labor disputes. The bill seeks to enjoin arbitration of claims of eighteen discharged employees. After hearing, the judge entered a decree which dismissed the bill as applied to eight employees and enjoined arbitration of the claims of ten employees. *Rubenstein* v. *Lottow*, 220 Mass. 156, 161. *Vincent* v. *Plecker*, 319 Mass. 560, 562. The plaintiff alone appealed, and we are concerned only with issues relating to those eight. The judge made findings and rulings. The evidence is reported.

On May 14, 1954, the plaintiff and the guild made an agreement in which the plaintiff recognized the guild as bargaining agent for certain employees, including those mentioned in the bill. Article XII provides: "2. If during the term of this contract, the publisher dismisses any employee for economy purposes or in connection with technological changes, the publisher shall give preference to such employee in filling a vacancy for which he is qualified."
"5. At the request of either the guild or the publisher two representatives of the publisher will meet with two members of the guild within five days from the date of such request

to take up grievances or disputes arising from the application of this agreement. Should a deadlock occur a disinterested person, mutually agreed upon by the aforementioned parties, shall within thirty days, be added to this committee. The decision of the majority shall be final and binding on both parties. If the representatives of the publisher and the representatives of the guild are unable to agree upon a mutually satisfactory arbitrator within two working days either party may request the American Arbitration Association to name an arbitrator. (Such arbitration shall be conducted pursuant to the voluntary labor arbitration rules of the American Arbitration Association) . . . . 6. Employees who allege discrimination or unjust treatment on the part of a representative of the publisher shall be entitled to have the complaint investigated by the guild's authorized representative with the department head, then if necessary with management in an effort to effect an adjustment. Should a settlement be impossible the matter may then be referred to a joint committee as outlined in this article, section 5."

On December 20, 1954, the plaintiff discharged fifty-eight employees, all covered by the agreement. Of these, fifty were notified by the plaintiff that they were discharged for reasons of economy, and eight because they were inefficient. The fifty received severance pay under the agreement. Representatives of the guild conferred with representatives of the plaintiff without effecting a settlement. The guild requested that the propriety of the discharges be arbitrated, and that the parties agree on a disinterested person as a member of the arbitration committee, as provided in article XII, section 5, but the plaintiff refused. On January 7, 1955, the guild filed with the arbitration association a demand for arbitration. This demand pertained to only nineteen of the fifty-eight employees discharged. Later the demand was withdrawn as to one employee, leaving the eighteen mentioned in the bill. Upon receipt of the demand, the arbitration association, in accordance with its rules, prepared a list of prospective arbitrators, and mailed copies

to the plaintiff and to the guild, requesting that each return the list with an indication of its preferences by January 14. The rules of the arbitration association provide that when "any party or both parties fail to return its list within the time specified, all persons named therein shall be deemed acceptable." On January 11, the plaintiff returned the list with a letter, stating that it "flatly refuses to arbitrate the claims of nineteen individuals in one arbitration proceeding because the facts and circumstances surrounding the case of each one of the nineteen individuals named are necessarily essentially different." The plaintiff also refused to designate its preference for arbitrators. On February 3, the arbitration association notified the plaintiff and the guild that it had designated a named individual as arbitrator, and that the matters to be arbitrated had been assigned for hearing at its offices on February 15.

The judge's findings divide the eighteen employees into three groups. The first group consists of three employees who were informed that they were being discharged for inefficiency. Each requested the plaintiff to change its records so that it would appear that his discharge was on the ground of economy, and he thus might avoid difficulty in obtaining other employment. These employees denied that they were inefficient, and contended that their respective discharges were for other reasons, and that in discharging them the plaintiff treated them unjustly and discriminated against them. The plaintiff agreed to change its records provided each signed a so called "release." Each signed a paper reading, "I hereby release the Boston Post from any obligation to place my name on a rehiring list." The plaintiff then changed its records, and the three received severance pay.

The fifteen employees comprising the second and third groups were informed that they were being discharged for reasons of economy. Of these, five, who comprise the second group, challenged the plaintiff's statement of the reason for discharge, and to the contrary asserted that they were discharged because of personal animosity of the plaintiff, because of their participation in the activities of the

guild, and "on the further grounds that they were trouble-makers and too active in union affairs."

The remaining ten employees, who constitute the third group, admitted that they were discharged solely for reasons of economy, but contended that they were unjustly treated in that the plaintiff was financially able to retain them and failed to give proper weight to their respective seniority or abilities as compared with other employees retained. The judge found that the agreement contained no provision for seniority rights, and enjoined arbitration of the claims in the third group. He refused to enjoin arbitration of the claims in the first and second groups.

We are of opinion that the judge was right in his refusal to enjoin arbitration of the claims in the first and second groups. In article XII the parties have provided a method for the consideration of "grievances or disputes arising from the application of this agreement." In the first instance, there is to be a joint committee of two representatives of the publisher and two guild members, with the addition, if necessary, of a fifth and disinterested person. The committee is empowered to make a "decision" which will be "final and binding." Failing that, the arbitration association, in accordance with its rules, will conduct a hearing and make an award. One particular "matter" which, arguably at least, might be referred to the committee is that of "Employees who allege discrimination or unjust treatment on the part of a representative of the publisher." The three employees in the first group, discharged originally on the ground of inefficiency, later changed to economy, contend that, in their discharge, they were treated unjustly and were the victims of discrimination. Among the "grievances or disputes arising from the application of this agreement" are the interpretation of the agreement itself, including the question whether these employees' complaints fall within it, and, if so, the further determination whether the discharges were unjust or the result of discrimination, or, in other words, were without just cause. *Matter of Bohlinger,* 305 N. Y. 539. *Greyhound*

*Corp.* v. *Division 1384 of the Amalgamated Association of Street, Electric Railway & Motor Coach Employees of America,* 44 Wash. (2d) 808, 820–821. *Southside Theatres, Inc.* v. *Moving Picture Projectionists, Local 150, I. A. T. S. E., A. F. of L.* 131 Cal. App. (2d) 798, 801–803.

We see no occasion to interrupt the normal course of the arbitration procedure voluntarily adopted by the parties themselves. In so deciding, we venture no statement as to the validity of any award. See *Burns* v. *Thomas Cook & Sons, Inc.* 317 Mass. 398, 401, and cases cited; *Magliozzi* v. *Handschumacher & Co. Inc.* 327 Mass. 569. Parties may raise before an arbitrator a challenge to his jurisdiction and, without waiving that question, may proceed to a hearing on the merits. The arbitrator should decide the jurisdictional question in the first instance, while the right to a judicial determination will be preserved. *Kent* v. *French,* 76 Iowa, 187. *Finsilver, Still & Moss, Inc.* v. *Goldberg, Maas & Co. Inc.* 253 N. Y. 382. See *J. F. Fitzgerald Construction Co.* v. *Southbridge Water Supply Co.* 304 Mass. 130, 134. We see no irreparable injury in first, as promised, carrying out arbitration before the initial tribunal contemplated in the agreement.

The second group of five employees, informed that their discharges were for reasons of economy, assert that, to the contrary, the real reasons were the plaintiff's personal animosity and their own union activities. Their contention, to the extent that their discharges were without just cause, brings them within the same category as the employees in the first group. But, as to the second group, the plaintiff makes the argument that the national labor relations board has exclusive jurisdiction of an unfair labor practice. U. S. C. (1946 ed.) Sup. V, Title 29, § 158 (a) (3). The board, of course, is without power to redress a discharge motivated by personal animosity or unfounded claim of inefficiency. *National Labor Relations Board* v. *Jones & Laughlin Steel Corp.* 301 U. S. 1, 45–46. *American Smelting & Refining Co.* v. *National Labor Relations Board,* 126 Fed. (2d) 680, 686 (C. C. A. 8). *Local No. 3, United Packinghouse*

*Workers of America, C. I. O.* v. *National Labor Relations Board,* 210 Fed. (2d) 325, 329 (C. A. 8). *National Labor Relations Board* v. *Late Chevrolet Co. Inc.* 211 Fed. (2d) 653, 655 (C. A. 8). See U. S. C. (1946 ed.) Sup. V, Title 29, §§ 158, 160. The further contention of an unfair labor practice, here union activities, should not preclude resort, at least in the first instance, to the procedure voluntarily adopted by the parties in their formal agreement. Decisions of the Supreme Court of the United States have not yet passed upon the jurisdiction of an arbitrator to adjudicate a contract violation which is also an unfair labor practice. 69 Harv. L. Rev. 726. See *Garner* v. *Teamsters, Chauffeurs & Helpers Local Union No. 776 (A. F. L.),* 346 U. S. 485; *United Construction Workers* v. *Laburnum Construction Corp.* 347 U. S. 656; *Weber* v. *Anheuser-Busch, Inc.* 348 U. S. 468. And in the absence of a clear expression of congressional intent, we shall not assume a lead in rendering largely useless a common method of expediting settlement of a labor controversy and a method which is approved in congressional declaration of policy. See §§ 101, 203 (d), of the labor management relations act of 1947, commonly called the Taft-Hartley act; 61 U. S. Sts. at Large, 136, 154; U. S. C. (1946 ed.) Sup. V, Title 29, §§ 151, 173 (d). We recognize that, as a practical matter, the national labor relations board cannot undertake to determine everything which is sought to be brought before it, and declines to review many cases. 69 Harv. L. Rev. 725, 729 et seq. We cannot believe that Congress intended to create a no man's land where voluntary arbitration is barred and the national labor relations board may be too overburdened to enter. There must be a penumbral zone where an initial tribunal selected by the parties may be permitted to reduce controversies in both number and scope prior to resort to an administrative or judicial tribunal. At any rate, this must be true, where, as in the case before us, some issues are not within the jurisdiction of the board. *McAmis* v. *Panhandle Eastern Pipe Line Co.* 273 S. W. (2d) 789, 793–794. Here, arbitration should at least be allowed to sweep away grounds of dispute which

are not within any preëmpted field. This is enough to decide the issue confronting us.

We find no valid objection in various contentions of the plaintiff respecting the decree of the court below as it affects the first and second groups. We by no means intimate that all the topics referred to in the testimony of the defendant Cort are appropriate for arbitration, or that if an arbitrator undertook to adjudicate some of them, his award would not to such extent be set aside. For example, we do not believe that an arbitrator can adjudicate under this agreement whether the employer was financially able to continue operations without discharging employees. His duties in the case of an employee purportedly discharged on the ground of economy would seem to be to determine whether that was the real ground of the discharge or whether, for example, the employee was the victim of personal animosity or discrimination. Otherwise, the employer's statement of the ground would be conclusive, and in some cases might deprive an employee of the preference in rehiring accorded by article XII, section 2. The plaintiff relies on cases like *Askinas* v. *Westinghouse Electric Corp.* 330 Mass. 103, 106, where it was said that an employee not employed for any definite term or to render any particular service could leave his employment or be discharged at any time. In those cases no discharges were alleged to have been made in breach of express provisions of the contract. In other words, it was not contended that what would otherwise be an indefinite term was limited by the employer's promise not to discharge unjustly or with discrimination, as in article XII. Two of the cases cited by the plaintiff expressly mention the possibility of such a provision. *Harper* v. *Southern Coal & Coke Co.* 73 Fed. (2d) 792, 793 (C. C. A. 5). *Boucher* v. *Godfrey,* 119 Conn. 622, 627. Other cases recognize that the inherent right to employ and discharge may be affected by contract or bargained away. *Marranzano* v. *Riggs National Bank,* 184 Fed. (2d) 349, 350 (C. A. D. C.). *Odell* v. *Humble Oil & Refining Co.* 201 Fed. (2d) 123, 128 (C. C. A. 10). 18 A. L. R. (2d) 367–370.

We discover no sound objection in the contention that the arbitration demanded is wholly impractical in that it asks for the arbitration of claims which are wholly different.

_Decree affirmed with costs_
_of the appeal._