JOHN H. LEONARD & others *vs.* EASTERN MASSACHUSETTS STREET RAILWAY COMPANY.

Suffolk.    November 7, 1956. — January 21, 1957.

Present: WILKINS, C.J., RONAN, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Labor. Contract,* Labor grievances, With labor union. *Res Judicata. Equity Pleading and Practice,* Parties, Class suit, Declaratory proceeding. *Laches. Equity Jurisdiction,* Laches.

A decision by the national labor relations board merely that disciplinary action taken by an employer against employees had been for cause and was not proved to have been unlawfully discriminatory did not make res judicata other issues which might be opened through the employees' labor union invoking as to them certain grievance procedure provided for in a collective bargaining agreement between the union and the employer. [312–313]

There was nothing in a certain collective bargaining agreement between a labor union and an employer providing for grievance procedure and ultimate arbitration which would prevent a court of equity from declaring rights under the agreement in those respects. [313]

A labor union comprising the members of several local unions was sufficiently represented by the chairman and a secretary of a "general conference committee," which consisted of the presidents of the locals and handled grievances for the locals, in a suit brought by the chairman and the secretary in behalf of the union against an employer for

a declaration of rights as to processing and arbitration of grievances under a collective bargaining agreement between the union and the employer. [314]

A suit in equity by representative officers of a labor union comprising the members of several local unions did not fail in the circumstances for want of formal votes authorizing its institution, or for want of a specific allegation as to why all the members of the union were not joined as plaintiffs, or because officers or members of the local chiefly interested in the subject matter of the suit were not plaintiffs. [314–315]

Delay on the part of a labor union in pressing for further action under partially completed grievance procedure provided in a collective bargaining agreement between it and an employer did not bar the union's maintenance of a suit in equity for determination of rights under such provisions of the agreement where it appeared that initially both parties acquiesced in a suspension of the procedure while awaiting a decision by the national labor relations board which might eliminate the grievances altogether, that about three months after the board's decision and after consideration by the union of the legal effect of the decision the union made demand on the employer to resume the grievance procedure, and that the suit was brought some eight months after the demand following correspondence between the parties setting forth opposing points of view as to the effect of the decision. [315–317]

Absence of certain votes by a local division of a labor union required preliminary to an appeal to and hearing by an employer's executive committee in the course of grievance procedure provided in a collective bargaining agreement between the union and the employer did not bar the union, in a suit in equity against the employer, from obtaining a decree that the union had a right to the hearing before the executive committee if the action necessary for the appeal thereto as prescribed by the agreement were taken promptly thereafter, where it appeared that, although the commencement of the suit was delayed a long time after completion of the initial stages of the grievance procedure preceeding the appeal, no specific time for the appeal was limited and a reasonable time was implied by the agreement and, in the circumstances, the delay in commencing the suit was excusable and a reasonable time for seeking the appeal had not expired when it was commenced. [317, 320]

Where, in a suit in equity by a labor union against an employer seeking a determination of the union's right to pursue the later stages of grievance procedure provided for in a collective bargaining agreement between the parties, it was determined that the union had a right to an appeal to and hearing by the employer's executive committee upon taking the necessary preliminary action therefor as prescribed by the agreement, there was no occasion for a decree requiring an arbitration provided for by the agreement following the decision of the executive committee: in view of the determination made, it was not to be assumed that the employer would not voluntarily comply with the agreement fully by going forward to the subsequent stage of arbitration if that stage were sought. [320–321]

BILL IN EQUITY, filed in the Superior Court on November 22, 1955.

The plaintiffs appealed from a final decree dismissing the bill after hearing by *O'Connell, J.*

*Francis J. Ulman,* for the plaintiffs.

*J. Joseph Maloney, Jr.,* for the defendant.

WHITTEMORE, J. We construe the bill of complaint as a bill for a decree under G. L. (Ter. Ed.) c. 231A, §§ 1–8, to declare the rights of a union, and its affected members, to have grievance complaints, allegedly pending, concerning the suspension of Douglas Holder and the discharge of Lynwood M. Hyde, heard and determined in accordance with the terms of a collective bargaining agreement. The bill in averring a controversy in respect of the rights to further processing and arbitration of the grievances and in praying for specific performance of the alleged agreement to arbitrate and for "such other and further relief as . . . [the court] shall deem meet and proper" is sufficient to present for construction the relevant parts of the agreement and rights thereunder (see c. 231A, § 6), even though in our view, for reasons hereinafter stated, there is no occasion now to ask for an order to enforce arbitration.

The judge in the Superior Court dismissed the bill of complaint, having found and ruled that "the petitioners seek to compel the respondent to submit to further arbitration which, in its essence and effect, will be a retrial of substantially all issues and facts fully tried out before the NLRB [national labor relations board], and determined adversely to the petitioners." See *National Labor Relations Board* v. *Eastern Massachusetts Street Railway,* 235 Fed. (2d) 700[1] (two cases: proceedings upon petitions for enforcement of orders of the national labor relations board reported in 110 N. L. R. B. 1963). The decision and order of the national labor relations board is an exhibit here.

The evidence, directly or by inference, shows the following facts: The union which entered into the collective bargain-

[1] Certiorari denied December 17, 1956, sub nomine *Eastern Massachusetts Street Railway* v. *National Labor Relations Board,* 352 U. S. 951.

ing agreement with the defendant was a voluntary associa-
tion of the members of eleven local unions of Amalgamated
Association of Street, Electric Railway and Motor Coach
Employes of America.  In 1952 Holder was president and
Hyde was a member of the executive committee of Haverhill
Local 503.  They were active in a strike in 1952 and opposed
a back-to-work movement which resulted in the suspension
from the local union of those who returned to work before
the end of the strike.  After Holder and Hyde returned to
work as bus drivers they were charged with deviations from
schedule.  Holder was "indefinitely suspended" on Decem-
ber 5, 1952, and Hyde was discharged on January 5, 1953.
The action in each case was not long after two suspensions
of the employee for one or two days for like alleged cause.
The union brought complaints before the national labor
relations board based, inter alia, on the suspension of Holder
and the discharge of Hyde, and Local Union 503 initiated
grievance procedure under the contract for Holder, Hyde,
and one Marcotte.  Holder and Hyde had each been em-
ployed by the defendant for over sixteen years and had
seniority rights in respect of choice of routes and lay-offs
and an expectation of a pension of $44 a month after twenty-
five years of service at age sixty-five.  The contract pro-
vides [1] that the grievance procedure is available "[w]hen

[1] Relevant contract provisions follow: Section 2 (1) "When any employee
who is a member of the Association has been suspended or discharged and
his division of the Association feels that an injustice has been done him, or
when a division of the Association has any other grievance affecting that
division only, the division shall have the right to take the matter up through
its officers with the division manager . . . .  If a satisfactory adjustment
cannot be reached with the manager, the division of the Association shall
have the right to appeal the case to the Company's Personnel Assistant to
the General Manager . . . ."  (3) "The division manager, upon the written
request of employes in the agreed upon form heretofore adopted shall furnish
the officer, or officers, of the Association with the reason for such suspension
or discharge together with a copy of all the documentary evidence pertaining
thereto . . . ."  (8) "In matters of discipline it is agreed that an employee
shall be informed as soon as possible as to any alleged misconduct or violation
of the rules, and in no case shall any employee be charged with, or required
to answer to any offense not called to his attention within four (4) days from
the date the Company first has knowledge thereof, except in cases of investi-
gation of conduct of operators in relation to collection of fares, nor shall the
Company be required to consider appeals from disciplinary cases after six (6)
months has elapsed from the date the offense was brought to the attention of
the employee."  (12) "Grievances are to be carefully examined and consid-

any employee . . . has been suspended or discharged and his division [local union] . . . feels that an injustice has been done him." The trial examiner for the national labor relations board found that Holder and Hyde had been discharged for union activity. The board reversed his findings as to these two men and some others and no appeal was taken as to Holder and Hyde. Other relevant facts are stated hereinafter.

1. The ruling that the issues have been determined is erroneous. The most that the national labor relations board has found[1] is that Holder and Hyde had been disciplined for

ered by the Executive Board of each division before any decision is rendered to take them up with the management. When they are taken up with the management, the regular course provided above is to be pursued." (13) "If a case is sufficiently meritorious and the Executive Board thinks that after following the above procedure justice to a member has not been done and it desires to recommend an appeal to the Company's Executive Committee, a report shall be made to each member of the exact nature of the grievance and referendum vote by ballot shall be taken by that division, giving every member of the division a right to vote upon the question of whether or not the case shall be appealed to the Company's Executive Committee." (14) "If the ballot vote of the division shows that the majority of the members voting are in favor of appealing the grievance to the Company's Executive Committee, the Secretary will so notify the Executive Committee in writing. After any such vote in favor of an appeal, the Company's Executive Committee will give a full hearing upon the case, at which the employee affected and his witnesses will be fully heard; and in such presentation he may be represented by Union officials and by such counsel as he shall select. The decision of a majority of the Company's Executive Committee, after each hearing, shall be conclusive, except as hereinafter in this section provided." (15) "Such hearing before the Company's Executive Committee shall be held within fourteen (14) days after the Company's Executive Commitee shall have received notice of the vote of the Division in favor of an appeal of the case, the Association pledging itself to go forward with the hearing within such time. The decision of the Company's Executive Committee on the case shall be rendered not later than fourteen (14) days after the conclusion of the hearing. If the decision of the Company's Executive Committee is unsatisfactory to the employes, and if a ballot vote of the Division shows that a majority of the members eligible to vote are in favor of arbitrating the case, the issue shall be submitted to a Board of Arbitrators as set forth in Section 1, Paragraphs 3 and 4."

[1] The national labor relations board said, "As to the remaining nine complainants [including Holder and Hyde], we are not satisfied that the record as a whole supports the inference . . . that the Company in disciplining them was motivated by union animus rather than, as the Company asserts, just cause. . . . Holder and Hyde engaged in certain work-rule infractions and were indefinitely suspended or discharged therefor." (A footnote adds, "Grievance appeals were being presented on their behalf by the Haverhill Local at the time of the hearing.") "[I]n no instance does the record show direct evidence of anti-union motivation on the part of the various supervisory officials who dealt with these employees. . . . In these circumstances, we are not satisfied that the affirmative burden resting upon the General Counsel to prove unlawful discrimination in the initial suspension of these employees has been satisfied."

cause and that it had not been proved that there was unlawful discrimination in the disciplinary action taken. As to the jurisdiction of the national labor relations board over unfair labor practices see U. S. C. (1952 ed.) Title 29, §§ 160, 158. The national labor relations board's finding that grievance appeals were being presented for Holder and Hyde is recognition by it of issues other than those which it decided. These included whether it was "the normal experience," as the national labor relations board expressly found as to indefinite suspensions, that the affected employees on invoking the grievance procedure would "in almost all instances" have the penalty reduced to a fixed number of days, seldom exceeding ten, and whether the deviations from schedule of Holder and Hyde were such as to warrant prompt reinstatement if established policy was applied to them, or were deliberate violations of rules, of which there is a suggestion in the record. Neither the existence of the grievance procedure nor the processing of the complaints under it impairs the function of the national labor relations board under the Federal statute. We are not concerned here with a contract violation which is also an unfair labor practice. See *Post Publishing Co.* v. *Cort*, 334 Mass. 199. This case is in the area which in the *Cort* case, citing *McAmis* v. *Panhandle Eastern Pipe Line Co.* 273 S. W. (2d) 789, 793, 794, we declared was surely not excluded by the Federal statute.

2. Any question of the validity of a collective bargaining agreement such as the one before us has been disposed of by St. 1949, c. 548, inserting § 11[1] in G. L. (Ter. Ed.) c. 150. There is nothing in the nature of the agreement to make it impossible or inappropriate for us to declare rights under or in respect of it. *Members of Bakery & Confectionery Workers International Union* v. *Hall Baking Co.* 320 Mass. 286, 293.

---

[1] "All provisions of collective bargaining agreements relating to arbitration and conciliation before public or private arbitration and conciliation tribunals shall be valid, and if the parties to such agreements agree that the determination of the tribunal on any issue shall be final, such determination shall be deemed final and shall be enforceable by proper judicial proceedings."

See Anderson, Actions for Declaratory Judgments (2d ed.) 1316.

3. The plaintiffs are sufficiently representative of the contracting union. The plaintiff Leonard is chairman and the plaintiff McNeill is financial secretary of General Conference Committee of Boston (hereinafter called GCC). GCC consists of the presidents of the several locals which comprise the contracting union, and acts as bargaining agent and handles grievances for the locals, beginning at some point after they have been initiated by the local union. The cases had been brought to GCC by the Haverhill local and Leonard had negotiated in regard to them with the late John Moran, then president, general manager, and chairman of the executive committee of the defendant. Leonard had "been a member of the General Conference Committee dealing with the Company" for about twenty years. While a vote of GCC to institute these proceedings would have been appropriate we do not think the bill must fail for lack of it. Compare *Donovan* v. *Danielson*, 244 Mass. 432. There is no suggestion in the record that the bill of complaint is unauthorized or has been filed against the will of the union, Local Union 503 or GCC. The inference is to the contrary. Leonard's duties make him an appropriate representative. The chairman and the financial secretary of GCC, by virtue of their offices in that representative committee, are appropriate representatives of all the members of the contracting union, on whose behalf the bill is expressly stated to be brought. *Hamer* v. *Nashawena Mills, Inc.* 315 Mass. 160, 162. *Pascale* v. *Emery*, 95 Fed. Sup. 147, 149 (D. C. Mass.).

That all the members of the contracting union are too numerous to be joined as parties plaintiff is manifest, and therefore, while this or other allegation stating why all the members of the class have not been joined should have been in the bill (*Wilkinson* v. *Stitt*, 175 Mass. 581, 584), this is not a defect to bar relief under the circumstances.

The fact that the grievance procedure, by the terms of the contract, is to be handled locally does not make it im-

perative that officers or members of Local 503 be parties
plaintiff or that there be a vote of that local. We have for
interpretation a single contract made with the voluntary
association of all the members of all the locals. The union
status of Holder (the third plaintiff) at the time when the
bill was brought is not established. If he then had no
representative status, he would be entitled nevertheless, in
view of his interest, to maintain the bill in his own behalf.
See *Members of Bakery & Confectionery Workers Interna-
tional Union* v. *Hall Baking Co.* 320 Mass. 286, 289, and cases
cited; *School Committee of Cambridge* v. *Superintendent of
Schools of Cambridge,* 320 Mass. 516.

4. The union is not barred here, or under the contract, by
lapse of time.

On January 30, 1953, the local union sent a letter to the
defendant reading, *"In accordance with the Agreement in
effect between the Union and the Company,* a vote was taken
by the members of the Local 503 on January 8, 1953, to
appeal the decision of the Assistant General Manager in the
instance of the indefinite suspension of the President of this
local, Douglas W. Holder" (emphasis supplied). The as-
sistant general manager replied on February 6, 1953, that
he would bring the letter to the attention of the executive
committee. The defendant by the express terms of § 2 (15)
of the contract was bound to proceed to hearing within
fourteen days of receipt by the executive committee of such
a notice as was sent. The obligation of the defendant to go
forward is, in express terms, conditioned on the receipt of
notice of a vote under the contract, not on the fact of a vote
conforming thereto.

On March 10, 1953, the local union wrote that a hearing
was also requested for Hyde and Marcotte. The vote on
January 8 had been a unanimous, nonballot vote to request
a hearing in the three cases.[1] Holder's case by then had

---

[1] "General discussion of conditions at present, and the firing of Marcotte,
and Hyde and Holder's suspension. Motion by Jean, seconded by Murphy
(2) to have recording secretary send letter to Wilkinson requesting hearing
before General Executive Board of the Company. Voted: Unanimous."

passed the two stages of grievance procedure preliminary to appeal to the executive committee; Hyde's case had not then passed the second stage. The necessary hearing of the Hyde case in the assistant general manager's department was held between March 11, 1953, when the company wrote asking whether there had been compliance with § 2 (1) and (3) of the contract, and April 6, 1953, when the assistant general manager wrote that he had reviewed the evidence and that the appeals were denied. Thereafter nothing was done by either party to process the grievances under the contract.

The national labor relations board hearings were held from February 16, 1953, to March 24, 1953. From time to time after they had ended, Leonard, following a practice commonly pursued by him with the defendant which had often resulted in satisfactory disposition of the complaints without invoking the last stages of the formal grievance process, asked Moran to reinstate Holder and Hyde. Moran's reply in each case was in substance the same: "It is in the machinery at the present time and I won't do anything about it," and the board decision would be final and he would abide by it.

It was manifestly reasonable to suspend grievance hearings so long as the possibility existed that the national labor relations board's decision would completely remove the grievances. The defendant by its inaction after January 30, 1953, in respect of Holder and by the stated position of its chief officer and chairman of its executive committee in effect initiated a suspension to extend until the time of the national labor relations board's decision and the union acquiesced in it. Failure to press for action on the grievances up to December 16, 1954, when the national labor relations board's decision was issued, is not a delay which can be construed as prejudicing the rights of either the union or the employee under the contract. Whatever the construction to be given to the provision of § 2 (8) of the contract (limiting to six months from the date of notice to the employee of the offence the time within which the defend-

ant is "required to consider appeals") it is inapplicable here.

It was the obligation of the parties to resume the grievance procedure promptly after December 16, 1954. The union made demand for this by its letter of March 3, 1955, stating that Local 503 had voted to process the Holder and Hyde cases to the full extent and requesting that the executive committee hear the cases or, alternatively, proceed at once to arbitration. In the intervening period GCC had met to consider what to do and had consulted Washington counsel. The delay from December 16, 1954, to March 3, 1955, is not unreasonable in the circumstances, in view of the legal question of the effect of the national labor relations board's decision.

The defendant on March 26, 1955, replied to the letter of March 3 asserting that the national labor relations board's decision disposed of the matter; the union in July, 1955, wrote at length the reasons why it disagreed; the defendant restated its position on July 28, 1955; and the union brought suit on November 22, 1955. There were GCC meetings and consultations with Washington counsel in the intervals. The defendant has not pleaded laches and the delay from December 16, 1954, to November 22, 1955, does not bar construction of the contract or a declaration of rights under it.

In view of the union's demand of March 3, 1955, the delay after that date does not bar its right to have the grievance procedure resumed.

5. The defendant, however, contends that the deficiencies in the votes mean that the union and the employees have no remaining rights. We do not agree. There is no time limited in the contract for the action prescribed in § 2 (13) and (14). A reasonable time in the circumstances is implied. In our view, in the extraordinary circumstances, it had not expired when suit was brought and the circumstances make it equitable that the grievances be now processed.

It is reasonable and fair that the respective positions and rights of the parties under the contract on March 3, 1955

(when the union within a reasonable time after December 16, 1954, made demand for processing of the grievances), and in the period following, be the same as they were in February, 1953 (when the defendant did not, as the contract called for, go forward in respect of the Holder grievance), and as they would have been in the period following February, 1953, had the defendant then gone forward. If the defendant's executive committee had convened for a hearing in February, 1953, and had at the threshold asked for proof of validity of the vote of January 8, the deficiencies therein would have been brought to light and the union, seasonably, would have had an opportunity to direct the local union to poll its members by ballot and otherwise conform strictly to the contract. The union also would have been on notice as to Hyde that full compliance with the voting procedure was being called for.

Collective bargaining agreements are to be broadly construed to accomplish their purposes of settling grievances substantively and maintaining good personnel relations. Informal negotiation in respect of pending grievances, as is shown to have occurred here, is a common and proper practice in implementing their provisions. In weighing equities, the fact that, when the union so acts as to show to the employer that the union in good faith is acting on the assumption that a particular stage of the grievance procedure has been reached, the employer has not disclosed why it disagrees, if it does, is of some significance. The first statement of the defendant to the union, after the April 6, 1953, denial of appeal, of the defendant's view that Hyde's case was not pending was in its letter of July 28, 1955, when it wrote that "no appeal to the Executive Committee, or any request for arbitration, was made until your letter of March 3, 1955, which was considerably over two years from the date of the discharge in question."

Other relevant circumstances are that prior to the national labor relations board's decision the defendant had never raised to Leonard any question "in regard to this case or any other, as to the method of vote or the way in which

the union officers were authorized to take up a grievance to the executive committee of the company" and the holding of the national labor relations board, in the proceedings in which the Holder and Hyde cases were dealt with, that in the case of certain employees of the Lowell division failure to process indefinite suspension grievances in the usual manner was an unfair labor practice. Inferentially, at least, a basis of the national labor relations board's holding as to Holder and Hyde was the expectation that their grievances would be processed in the usual manner. In view of Moran's talks with Leonard and the defendant's position it was not unreasonable for the union prior to July 28, 1955, to assume, as it appears to have done, that all that stood in the way of an executive committee hearing of the grievances was the national labor relations board's decision. The return to the defendant's payroll of the employees ordered back by the national labor relations board, as we were informed at the argument, had not occurred pending disposition of the petition for certiorari. Since the petition was not disposed of until December 17, 1956, there is an aspect of currency to all the grievances arising out of the 1952 strike.

Important issues in respect of Holder and Hyde have not been determined. If the employees should fail to have them heard on the procedural ground that the union failed in perfecting the rights of appeal, the question would arise whether an exceptional requirement of strict compliance with the contract in these cases was an unfair labor practice. We intend no suggestion. On the record here it could with equal likelihood be for a nondiscriminatory cause. But all that the national labor relations board decided was that "unlawful discrimination *in the initial suspension of these employees*" had not been proved (emphasis added). It is reasonable that as a means of avoiding possible further controversy the grievances be promptly processed to completion under the contract. Therefore, even though the mere fact alone of the pendency of the national labor relations board's proceedings did not make it reasonable not promptly to comply with the contract in respect of the

votes, we hold that a reasonable time for doing so has not expired.

6. We do not agree with the view that the plaintiffs or the employees agreed to accept the national labor relations board's decision. Moran perhaps suggested this and on cross-examination this exchange occurred. "Q. . . . And Mr. Moran said '. . . Let's wait and see how it comes out, and I will be bound by the result.' A. That is about what he said. About what was said. Q. And you left it that way? . . . A. Right." At most this is ambiguous and does not show Leonard agreeing to accept an adverse decision in lieu of grievance procedure.

7. The contract requires votes by ballot prior to executive committee action.[1] The evidence does not warrant a finding that the contract had been modified by practice so as to waive this requirement. The strong inference, if not the direct proof, is that no vote after that of January 8, 1953, underlay the letter of March 3, 1955. It is not necessary to decide the point. We rule that if, promptly after decree in the Superior Court, following rescript, subsections (13) and (14) of § 2 of the contract are complied with or if these provisions have theretofore been complied with, the union is entitled to have each of the Holder and Hyde grievances heard by the defendant's executive committee, and thereafter by arbitrators in accordance with the contract provisions if such grievance is not otherwise disposed of prior to invocation of the arbitration provisions of the contract.

8. The case does not present any aspect calling for an order to arbitrate. There is no reason to assume, now that it is determined that the issues have not been disposed of and that there are existing rights under the contract, that the defendant will not honor such rights fully throughout the remaining stages of the grievance procedure including

---

[1] Since there must be new votes if there is to be further grievance procedure it is not necessary to discuss the defendant's contention that the local union's vote of January 8, 1953, was invalid because of improper expulsion from the union of members who had returned to work during the strike.

arbitration if that stage is reached.  Voluntary compliance with collective bargaining agreements is manifestly in the interest of employers quite as much as employees.  See Shulman, Reason, Contract & Law in Labor Relations, 68 Harv. L. Rev. 999.[1]

9. The final decree is reversed.  A declaratory decree is to be entered in the Superior Court declaring the obligations under the contract in accordance with the ruling in the foregoing paragraph 7.

*So ordered.*

---

[1] On the issue argued and not decided of the enforceability of agreements to arbitrate, see also Cox, Legal Aspects of Labor Arbitration in New England, 8 Arb. J. (N.S.) 5;  Gregory and Orlikoff, The Enforcement of Labor Arbitration Agreements, 17 U. of Chicago L. Rev. 233;  Murphy, The Enforcement of Grievance Arbitration Provisions, 23 Tenn. L. Rev. 959;  Williston, Contracts (Rev. Ed.) § 1919;  Restatement: Contracts, § 550; *Local 205, United Electrical, Radio & Machine Workers of America (UE)* v. *General Electric Co.* 233 Fed. (2d) 85 (C. A. 1); *Textile Workers Union of America (CIO)* v. *American Thread Co.* 113 Fed. Sup. 137 (D. C. Mass.); *Lincoln Mills of Alabama* v. *Textile Workers Union of America, CIO,* 230 Fed. (2d) 81 (C. A. 5); *United Steelworkers of America, C. I. O.* v. *Galland-Henning Mfg. Co.* 139 Fed. Sup. 630 (D. C. E. D. Wisc.) and cases cited.