CORTIANA *v.* KANSAS EDUCATION ASSOCIATION.

4-8875                                    220 S. W. 2d 598

Opinion delivered May 16, 1949.

Rehearing denied June 13, 1949.

*Rex W. Perkins, James W. Ellis, William C. Jenkins* and *J. R. Crocker,* for appellant.

*Lee Seamster* and *Atkinson & Atkinson,* for appellee.

FRANK G. SMITH, J.    Appellant filed this suit to enforce the specific performance of an alleged contract to purchase a tract of land. A demurrer to the complaint was sustained, from which decree is this appeal.

The case is a continuation of the litigation reported in the case of Cortiana v. Franco, 212 Ark. 930, 208 S. W. 2d, 436.

The facts alleged in the complaint, as constituting the cause of action, most of which are recited in the opinion above referred to are as follows. The Kansas Educational Association of the Methodist Church, acquired by assignment to it, two mortgages on the land in question, executed by Cortiana and his wife, and as the

basis of this suit is certain letters which passed between the managing officer of the Association and Cortiana, we copy them in full. The first of these letters reads as follows:

"January 19, 1933.

"In re: Cortiana Loan No. 14148

"Mr. D. Cortiana
Springdale, Arkansas.

"My dear Mr. Cortiana:

"I am in receipt of your letter of a few days ago relative to the foreclosure of your loan. I note that you prefer that this should not be done inasmuch as you thought it would hurt your credit. I note further that you would like to have the privilege of going ahead just as you now are, and that you would pay us first.

"In reply will say that I know this matter has been a source of a great deal of worry to you people, as it has also to us. I wish also to say that we certainly do not wish to do anything that we do not think is for your best interests as well as for ours. I feel however, as stated to you in my letter 7 that the safest thing both for you and for us is for us to proceed to take title under our foreclosure judgment. As stated to you while we were there, I do not believe this means at all that you will be put out of your home. I do not believe anyone will pay or bid, the amount that we have in the property, and that means that the property will be bid in for us and we will take title. Then, as stated to you in a previous letter, we would be more than glad to either rent the property to you under proper lease, or sell the same back to you as soon as you can get clear of your other creditors, and thence as soon as it can safely be done, under a proper contract. We do not want the property, and would much rather sell it back to you again. This plan, however, would prevent other creditors stepping in and making claim to your entire crop as they did last year. It is true that it was not your fault that this happened last year, but was the fault of the Shartel Mortgage Company.

Nevertheless, there is nothing to prevent these other creditors from running an attachment again this coming summer, and I think, therefore, that this plan is much the safer. May I say further that I do not believe that this plan will in any way affect your credit nor your ability to continue to operate your plant and canning factory as you have heretofore. In fact, I am not sure but that it may help, because those from whom you buy in the future will be more assured that your old creditors cannot step in and run attachment for your old debts, thus taking your whole crop. I hope, therefore, that you see this matter as I do and that you do not worry about the matter, because we are only trying to do what it seems to us is best for both of us. As I have already said, I see no reason why you should not continue to retain possession of your home and regain title under a re-purchase agreement as above indicated.

''With kindest personal regards to yourself and family, I remain

''Yours truly,

''F. E. Wolf,

''Treasurer''.

The mortgages were foreclosed and the Association became the owner of the land and for a number of years the Cortianas continued in possession as tenants under annual rental contracts. A note for the rent for the year 1946 was given and upon default in its payment an action of unlawful detainer was filed. The Cortianas answered and alleged that they were in possession under a contract to purchase the land, but that notwithstanding this contract the Association had sold the land to one Smith, who in turn sold and deeded it to one John Franco and Albert Pellin and these persons were made parties, it being alleged that they had purchased with the full knowledge of Cortiana's possession and of his claim of the right to possession under a contract of purchase.

It was held in the case above cited that the Association had made proper and sufficient proof of all facts required and necessary to maintain the action of unlaw-

ful detainer, to-wit: Their possession as landlord, a contract of rent, unpaid rent and demand for possession. It was held that defendant Cortiana could not convert that action into a suit for specific performance, but that he might bring a separate suit to obtain that relief, which he later did, and this appeal is from the decree of the court sustaining a demurrer praying that relief.

The opinion in the unlawful detainer suit was delivered February 16, 1948. The managing officer of the Association wrote Cortiana the following letter:

"July 8, 1946

"Mr. D. Cortiana
Springdale, Arkansas

My dear Mr. Cortiana:

"I am writing this to advise that our Committee feels that some definite change will need to be made in the handling of our above property before another year. You know that we have been trying to hold the place for you so that you could buy it, and have been renting it to you at less than a normal rental figure. Our committee feels that this cannot continue any longer. As you know also prices of everything else are advancing very rapidly and this includes not only the price of land and houses but also rent. You should, therefore, make your very definite plans to buy the property this fall or be prepared to pay at least twice the amount of rent you are now paying. May I say, however, that I think it would be much better for you to get your finances in shape to buy the property. You have always indicated that you wanted to repurchase the property and we have tried to hold it for you. We have had offers to sell and now have a definite offer for the buying of this place. I doubt, if I can hold our committee off much longer. If, therefore, you are interested in trying to buy it, I think, you should make definite arrangements about the matter. I should also add that I am sure our Committee would not be willing to sell it for less than $5,500. They would be willing to make terms, but I feel sure that they would expect at least $1,500 paid down at the time the deal is

closed. I wish, you would give this matter your very serious consideration and advise me as I would like to know how to answer the other party who is interested in buying. If you wish to try to buy, I will prepare one of our regular Offer to Purchase Blanks somewhat along the above lines and send it down for your approval and signature. You understand that after the $1,500 is paid, we would be willing to carry mortgage back for the balance with annual reduction payments. Please let me hear from you.

"Yours very truly,

"F. E. Wolf".

In reply to this letter Cortiana wrote the Association the following answer:

"Springdale, Arkansas

"July 15, 1946

"Dear Mr. Wolf:

"In regard to your letter of July 8, we are positively doing everything possible to buy our place. Mr. Wolf, we know you realize how awfully hard we have always tried and as the odds seem to have always been against us we have not had a chance to buy. However, this year things seem pretty well to be in our favor and therefore, we are positively going to make a definite plan agreeable to both of us to buy back our property.

"Mr. Wolf, we have a good crop this year, as you know the grape harvest will not begin until the third or fourth week in August we are unable to make a definite decision at the present, therefore, no later than October 1st we will be in a position to make this settlement that we are both so very anxious to make agreeable for all concerned.

"R-1 Box 115

"Springdale, Ark.            "Yours truly,

"D. G. Cortiana."

The three letters herein copied were made exhibits to the complaint filed by Cortiana and are relied upon as constituting his cause of action.

It appears from the letter dated January 19, 1933, that it was contemplated that Cortiana would repurchase the land and that until he had done so he would remain in possession as a tenant, paying an annual rent, he had made no attempt to exercise the right to repurchase the land when the letter dated July 8, 1946, was written. This letter advised that the committee of the Association having the matter in charge, had decided that they could no longer hold the transaction in abeyance as they had a definite offer to purchase the land from a purchaser who was awaiting an answer. A minimum price for the land and a minimum cash payment was suggested.

Cortiana did not accept this offer, on the contrary he stated that he "was unable to make a definite decision at the present", but stated that no later than October 1st following, he would be in a position to make a settlement that would be satisfactory to all parties. Just what settlement that would be was not stated. Cortiana did not say he would pay the price demanded. It was certain, therefore, that no contract was made for the sale of the land, and there was therefore no contract, the specific performance of which could be enforced.

We have many times held that the courts will not make contracts for the parties, and that the specific performance of a contract will not be enforced where the parties have not agreed upon the essential details, the most recent case to that effect being that of Wyatt v. Yingling, 213 Ark. 160, 210 S. W. 2d 122.

After the receipt of Cortiana's letter above copied, dated July 15, 1946, in which he stated that he was "unable to make a definite decision at the present", the Association accepted an offer to purchase, of which they had advised Cortiana in the letter dated July 8, 1946. And on or about July 26, 1946, a contract was entered into between the Association and Smith whereby the land was sold to Smith, who conveyed to his co-defendants John Franco and Albert Pellin.

After this contract and sale, Cortiana offered to comply with the terms offered him for the purchase of the land, but it was then too late as the offer was not

made until after the contract with the sale to Smith had been made.

The complaint supplemented by the exhibits thereto does not allege the existence of a contract between the parties, and the demurrer was therefore properly sustained.