The UNITED FURNITURE WORKERS OF AMERICA (AFL-CIO), Plaintiff,

v.

The LITTLE ROCK FURNITURE MFG. CO., Defendant.

No. 3289.

United States District Court
E. D. Arkansas, W. D.

Feb. 4, 1957.

**130**

Henry Woods, of McMath, Leatherman & Woods, Little Rock, Ark., for plaintiff.

W. P. Hamilton, Jr., of Moore, Burrow, Chowning & Mitchell, Little Rock, Ark., for defendant.

TRIMBLE, District Judge.

This suit was begun on December 12, 1956, by the filing of a complaint by the United Furniture Workers of America (AFL–CIO) against the Little Rock Furniture Manufacturing Company wherein it was alleged that the plaintiff is the bargaining agent for the employees of the defendant; that the defendant is engaged in the production of goods for interstate commerce and that on March 1, 1956, the parties entered into a collective bargaining agreement, a copy of which was attached to the complaint as Exhibit "A".

The complaint alleged that on or about October 11, 1956, defendant discharged one of its employees, a member of plaintiff's union, and that on October 19, 1956, defendant was asked to submit the dispute arising from the discharge to arbitration; that the defendant refused to arbitrate the dispute and that such refusal constituted a breach of the collective bargaining agreement. The prayer of the complaint reads as follows:

"The plaintiff herein, in view of the defendant's refusal to comply with the terms of the collective bargaining agreement mentioned above, herewith prays that this court decree specific performance of said collective bargaining agreement and particularly that section of said agreement requiring arbitration of all disputes thereunder. This relief is prayed for under the provisions of Section 301–A of the Labor Management Relations Act of 1947 (Taft-Hartley Act) [29 U.S.C.A. § 185]. The plaintiff further prays for its costs and for all other relief to which it may be entitled."

On December 31, 1956, defendant filed a motion to dismiss the complaint on two grounds, (1) that the court is without jurisdiction of the subject matter of the complaint, and (2) that the complaint fails to state a claim against the defendant upon which relief may be granted in that there is no provision in the contract requiring arbitration of the discharge of employees.

Article II of the Agreement which relates to grievance procedure and arbitration reads as follows:

"Section 1. Should any dispute arise in the application of any provision of this Agreement, or as to any facts calling for the application thereof, such dispute, except as to wages shall be subject to adjustment or arbitration as herein provided. Any cause for alleged grievance or dispute must be presented in writing within five (5) days after its occurrence to the Company's authorized representative. Every effort will be made by the representatives of the parties to amicably and satisfactorily adjust any cause for alleged grievance or dispute. For this purpose the Union will appoint a Shop Committee, with not to exceed ten (10) members, which will deal directly with a representative or representatives designated by the Company. The International Representative of the Union may be present at the meetings of the representatives and the Shop Committee.

"If an alleged grievance or dispute cannot be adjusted and satisfactorily disposed of, it shall be submitted to arbitration. For arbitration of any alleged grievance or dispute, the Company shall appoint a representative and the Union shall appoint a representative. If the representatives of the Company and the Union cannot agree, these two representatives shall select a third arbitrator. If, within five (5) days the representatives of the Company and the Union cannot agree on a third arbitrator, the parties agree that the third party shall either be Professor Ralph C. Barnhart, Professor of Law at the University of Arkansas, or that Professor Barnhart shall appoint the third party. A decision agreed to by a majority of the arbitrators shall be binding on all parties.

"The cost of such arbitration shall be borne equally by the parties except attorney's fees."

### I.

There are two questions presented by the motion, the jurisdiction of the court and the sufficiency of the allegations of the complaint. I shall discuss the latter of those questions first.

It is seen that the agreement covers the right of arbitration of any dispute that arises in the application of any provision of the agreement, and following the detailed provisions regarding procedure the various subjects intended to be covered by the agreement are set forth in Articles III to XI, inclusive (omitting Article VIII). These provisions cover specifically: vacations, hours of work, leave of absence, seniority, wages, strikes, lock-outs, holidays and termination of the agreement.

Article VIII is entitled "General Provisions", which are: the posting of notices, one steward in each department, the right to visit the plant by a representative of the plaintiff, superannuated or incapacitated employees, military service, and restriction against requirement of employee to do work for which he is not qualified.

The court has been unable to find in the agreement any specific provision relating to the right to arbitrate growing out of the discharge of an employee, and it does seem that if it had been the intention of the parties that a grievance or dispute growing out of the discharge of an employee had intended to be covered by the agreement, it would have so provided.

Counsel for plaintiff contends that the contract calls for the arbitration of any dispute between the Union and the management involving *working conditions*. It should be noted that the agreement itself neither specifically nor generally provides for arbitration of any dispute arising under the subject of "Working Conditions". It is true that the contract states that the company recognizes the Union as the sole and ex-

clusive representative for the purpose of collective bargaining in respect to all working conditions, but having recognized the authority of the Union to bargain, the agreement then proceeds to set out the subjects as hereinabove indicated.

Furthermore, it is extremely doubtful that the subject of the discharge of an employee or the right to discharge is covered by the term "working conditions".

In the case of Missouri Pacific Railroad Co. v. Norwood, D.C.Ark., 42 F.2d 765, it was held that the term "working conditions" used in the Railway Labor Act, 45 U.S.C.A. § 151 et seq., did not cover the enforcement of the Arkansas Full Crew Law, that is, the term did not bestow upon the Interstate Commerce Commission authority to make a regulation permitting the railroad company to disregard a state statute requiring a certain number of men in train and switching crews. The court there said that the term "working conditions" simply means conditions affecting the work of the employees as might be the subject of agreement between the carriers and the employees, thus indicating that the term is generic in character and would become effective only when the matter under consideration by the parties to the contract is specified and defined.

See also In re Chicago North Shore & M. R. Co., 7 Cir., 147 F.2d 723 and Southern Pacific Co. v. Joint Council Dining Car Employees, Locals 456 and 582, 9 Cir., 165 F.2d 26.

I am, therefore, extremely doubtful that the agreement on which this suit is based contains any provision relating to the right of the defendant to discharge one of its employees.

■ The remedy sought here is specific performance of a contract. The plaintiff asks the court to require the defendant to submit to arbitration a dispute growing out of the action of the defendant in discharging an employee for the apparent failure on the part of the employee to conform to certain re-

quirements of the employer. As heretofore stated, the subject of discharge or re-employment of an employee is nowhere mentioned in the contract. I, therefore, find that the contract does not meet the requirements of certainty to give the court authority to act, as such requirements are set forth under the subject of "Specific Performance" in 49 Am.Jur., page 34, as follows:

"§ 22. *Generally.* In order for a court of equity to decree specific performance of a contract, the court must be able to determine what must be done to constitute performance. The indefiniteness of an agreement is an adequate reason for refusal to direct specific performance thereof. The contract itself must make the precise act which is to be done clearly ascertainable. It is fundamental that in order to do this and to enable the court to decree specific performance, the terms of the contract must be clear, definite, certain, and complete. The contract must be free from doubt, vagueness, and ambiguity, so as to leave nothing to conjecture or to be supplied by the court. It must be sufficiently certain and definite in its terms to leave no reasonable doubt as to what the parties intended, and no reasonable doubt of the specific thing equity is called upon to have performed, and it must be sufficiently certain as to its terms so that the court may enforce it as actually made by the parties. * * *"

In the case of Wyatt v. Yingling, 213 Ark. 160, 210 S.W.2d 122, 123, the court quoted from another chapter in Am.Jur. on the question of the sufficiency of a contract to warrant Specific Performance, and there said:

"In the chapter on Statute of Frauds, 49 Am.Jur. Sec. 354, it is said: 'It is not sufficient that the note or memorandum express the terms of a contract; it is essential that it completely evidence the contract which the parties made by giving all of the essential terms. The

writing must be such that all of the contract can be collected therefrom; resort cannot be had to the terms of the oral contract to supply deficiencies in the memorandum. * * * A contract in writing which leaves some essential term thereof to be shown by parol is only a parol contract, and is, therefore, not enforceable under the statute of frauds.' "

In a more recent case, Cortiana v. Kansas Educational Association, 215 Ark. 286, at page 291, 220 S.W.2d 598, at page 601, the court said:

"We have many times held that the courts will not make contracts for the parties, and that the specific performance of a contract will not be enforced where the parties have not agreed upon the essential details, the most recent case to that effect being that of Wyatt v. Yingling, 213 Ark. 160, 210 S.W.2d 122."

## II.

If the agreement which forms the basis of this suit had been sufficiently certain and had contained a specific requirement that a dispute arising from the discharge of the employee should be submitted to arbitration, there would still remain the question of whether this court has jurisdiction to enforce the agreement.

In the able brief of counsel for plaintiff interesting questions of law are discussed and the conclusions reached by counsel in most instances are correct. The court, by its own research, has further explored authority relating to the right claimed by the plaintiff in this case, that is, enforcement by the court of submission to arbitration of a dispute growing out of a violation of a provision of the Labor-Management Agreement involved herein. There can be no valid contention against the position of counsel for the plaintiff that the National Labor Relations Acts (both the Wagner Act and the Taft-Hartley Act), 29 U.S.C.A. § 141 et seq., were designed to and did create a means of orderly procedure leading to the consummation of bargaining agreements, as well as the enforcement of such agreements. If the contract here involved is sufficiently certain to support an action for specific performance, it must then be determined that this court has jurisdiction of such an action.

█ It is elementary that Federal Courts must find their jurisdiction in express provisions of Federal Statutes, that is, this court's power to hear and determine an action can be acquired only by virtue of statute. State Highway Commission of Arkansas v. Kansas City Bridge Co., 8 Cir., 81 F.2d 689, certiorari denied, 298 U.S. 661, 56 S.Ct. 682, 80 L.Ed. 1386; Security-First National Bank of Los Angeles v. Republic Pictures Corporation, D.C., 97 F.Supp. 360, reversed 9 Cir., 197 F.2d 767; and Westark Production Credit Association v. Fidelity & Deposit Co. of Maryland, D.C., 100 F.Supp. 52, 53. In the case last above cited, Judge Miller said:

"The defendant does not have an 'established right' to have its case tried in a United States District Court. Subject to the limits set forth in the Constitution, the jurisdiction of the inferior federal courts is a matter entirely within the authority of the Congress. As stated by the court in Kline v. Burke Construction Co., 260 U.S. 226, 234, 43 S.Ct. 79, 82, 67 L.Ed. 226: 'Only the jurisdiction of the Supreme Court is derived directly from the Constitution. Every other court created by the general government derives its jurisdiction wholly from the authority of Congress. That body may give, withhold or restrict such jurisdiction at its discretion, provided it be not extended beyond the boundaries fixed by the Constitution. (Citing cases.) The Constitution simply gives to the inferior courts the capacity to take jurisdiction in the enumerated cases, but it requires an act of Congress to confer it. The Mayor (and Aldermen of City of Nashville) v. Cooper, 6 Wall. 247, 252, 18 L.Ed. 851. * * * ' "

Plaintiff's counsel argues that jurisdiction is given this court by Section 301 of the Labor-Management Relations Act of 1947, 29 U.S.C.A. § 185. There is a marked division of opinion by some of the United States District Courts as was fully discussed in the majority opinion of the court and the dissenting opinion in the case of Lincoln Mills of Alabama v. Textile Workers Union, 5 Cir., 230 F.2d 81.

As I view the matter after a study of the opinions of the courts on both sides of this issue, the very learned opinion by Chief Judge Magruder of the First Circuit, U.S.C.A., in the case of Local 205, etc. v. General Electric Co., 233 F.2d 85, should be accepted as controlling on the question of jurisdiction. Similar conclusions were reached by the Third Circuit Court of Appeals in the case of Independent Petroleum Workers of New Jersey v. Esso Standard Oil Co., etc., 235 F.2d 401; and by the Sixth Circuit Court of Appeals in the case of Local 19, etc. v. Buckeye Cotton Oil Co., 6 Cir., 236 F.2d 776.

In the Local 205 case, supra, the plaintiff-appellant sought equitable relief in a suit to compel the employer to arbitrate a dispute over whether an employee was employed in a certain job classification carrying a higher rate of pay than he in fact was receiving and the propriety of the discharge of another employee for refusing to clean certain machines when he asserted such work was in addition to his regular duties.

The District Court sustained a motion to dismiss for want of jurisdiction and in an opinion reported in the case of Local 205, etc., v. General Electric Co., 129 F.Supp. 665, District Judge Aldrich concluded that the issuance of an injunction was forbidden by the Norris-LaGuardia Act, 29 U.S.C.A. § 101 et seq.

In an exhaustive opinion on an appeal in the Local 205 case, Chief Judge Magruder reviews the holdings of the various District Courts and Circuit Courts of Appeal, as well as the Westinghouse case which will be hereinafter referred to. It would unduly extend this opinion to discuss the various approaches to the questions involved made by the court in the Local 205 case. After discussing the limitations upon the effectiveness of the pertinent provisions of the Labor-Management Relations Act of 1947, the court said [233 F.2d 100]:

"Some of those limitations have already been noted. Another which must be discussed is the provision of § 4 which authorizes specific enforcement of an agreement to arbitrate by a district court 'which, *save for such agreement*, would have jurisdiction * * * of the subject matter of a suit arising out of the controversy between the parties * * *.' (Italics added.) Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp., 1955, 348 U.S. 437, 460, 75 S.Ct. 489, 500, 99 L.Ed. 510, has sharply curtailed the subject matter jurisdiction of federal courts under § 301 to adjudicate directly between union and employer a controversy over 'terms of a collective agreement relating to compensation, terms peculiar in the individual benefit which is their subject matter and which, when violated, give a cause of action to the individual employee.' One court has already held that if the district court is barred by the Westinghouse decision from granting pecuniary relief on a wage controversy, it also lacks jurisdiction, by the terms of § 4, to compel arbitration of that dispute. Textile Workers Union, etc. v. Williamsport Textile Corp., D.C.M.D.Pa.1955, 136 F.Supp. 407. However, the effect of the Westinghouse holding, reflected in all of the opinions of the majority justices, was to eliminate from § 301 jurisdiction a complaint by a union that involves no more than a cause of action which is 'peculiar in the individual benefit' or 'the uniquely personal right of an employee' or which 'arises from the individual contract between the employer and employee'.

348 U.S. at pages 460, 461, 464, 75 S.Ct. at pages 500, 501, 503. That holding was not aimed at any cause of action or remedy that appropriately pertains to the union as an entity, particularly one which an individual employee may have no equal power to enforce. The promise of the employer to arbitrate, which frequently is linked in the contract or in negotiations with a union no-strike pledge, seems to us to be at the forefront of the contract terms for whose breach only the union can effectively seek redress, and for whose breach § 301 should therefore still be an appropriate source of jurisdiction. Indeed, the history of litigation under § 301 shows that if cases seeking to compel an employer to arbitrate were thrown into the discard along with Westinghouse-type cases and those barred for trenching on exclusive NLRB jurisdiction, there would be no significant use a union could make of § 301. Its terms and legislative history demonstrate that, as we have earlier said of the Norris-LaGuardia Act, it was not intended to be strictly a 'one-way street.' The Westinghouse opinions show no intent to create any such result. It seems to us therefore that that decision is to be interpreted as denying jurisdiction over a controversy only where the union is seeking a remedy, usually a judgment for damages, which the individual employee equally could enforce in a suit on his personal cause of action. On that analysis, 'jurisdiction \* \* \* of the subject matter of a suit arising out of the controversy' will exist so long as the union is not asking for the relief available to the individual employee, and thus the test of § 4 will be satisfied by a complaint which meets the terms of § 301 itself. Cf. Wilson Bros. v. Textile Workers Union, supra, 132 F.Supp. [163] at page 166.''

 I am in full agreement with the last citation. This means, of course, that this court is now holding that it does have jurisdiction of a suit to enforce the specific performance of arbitration of a matter made arbitrable by the terms of the Labor-Management Agreement under consideration. However, since it has been held in Part I of this opinion that the subject matter of the dispute between the parties to this suit is not enforceable by specific performance, the action will be dismissed.