257 F.2d 467
 LODGE NO. 12, DISTRICT NO. 37, INTERNATIONAL ASSOCIATION OF MACHINISTS, Appellant,
v.
CAMERON IRON WORKS, Inc., Appellee.
 No. 17025.
 United States Court of Appeals Fifth Circuit.
 June 30, 1958.
 Rehearing Denied August 11, 1958.
 
 Chris Dixie, Houston, Tex., Plato E. Papps, Washington, D.C., Dixie & Schulman, Marion C. Ladwig, Robert E. Hall, Houston, Tex., for appellant.
 Leroy Jeffers, Joseph W. Moore, Fouts, Amerman & Moore, Vinson, Elkins, Weems & Searls, Houston, Tex., for appellee.
 Before HUTCHESON, Chief Judge, and RIVES and CAMERON, Circuit Judges.
 RIVES, Circuit Judge.
 
 
 1
 The appellant and the appellee are parties to a collective bargaining contract within the purview of the National Labor Relations Act.[1] The contract was effective for a two-year period from June 1, 1956, through May 31, 1958, and included a renewal provision. Under the terms of the contract, the right to employ and discharge employees, while vested exclusively in the Company, is subject to certain limitations, one being that a discharge may constitute a "grievance." A "grievance procedure" is specified for any difference arising between the Company and any employee as to the meaning, application or interpretation of the contract; an unsettled grievance may be submitted to arbitration. Pertaining to arbitration, Article V, Section 2 of the contract states:
 
 
 2
 "The Board of Arbitration shall render a decision within fifteen (15) days from the date the hearing is completed. The terms and conditions of settlement shall be within the sole discretion of the Board and the decision of a majority of the Board shall be final and binding on the parties; provided, however, the Board shall have no authority to violate, contravene, disregard or supplement the terms of this agreement."
 
 
 3
 The contract contains a "wage reopening clause" which states that the question of wages can be reopened by either party once a year upon giving thirty days' written notice to the other, and if no agreement is reached within sixty days after the notice, any strike limitation on the Union terminates.
 
 
 4
 The appellant reopened the question of wages under the "wage reopening clause" and, after reaching no agreement, effected a strike on April 29, 1957. The strike ended on June 8, 1957, with a settlement of a three cent per hour wage increase. The settlement agreement was in the form of a letter from the Company accepted by the appellant. The last paragraph of this letter states:
 
 
 5
 "Strikers who are lawfully entitled to reinstatement shall be reinstated to their respective jobs as rapidly as an orderly and economic readjustment of plant operations will permit, and in any event in not more than thirty (30) days from the date the strike is discontinued. Reinstatement notices will be mailed to the last known address of striking employees. Employees who do not report for duty, or submit a valid reason for not reporting, within five (5) days after reinstatement notice is mailed shall forfeit any right to reinstatement. These provisions shall not in any way prejudice the right of the company to reduce the working force." (Emphasis supplied.)
 
 
 6
 Upon the termination of the strike, fifteen employees, members of appellant, were discharged or were refused reinstatement because of "strike misconduct."
 
 
 7
 Appellant demanded arbitration of the discharge of or refusal to reinstate the fifteen employees and, upon refusal by the Company, brought this action to compel arbitration under the contract, invoking the jurisdiction of the federal courts under section 301 of the Act.[2] The trial judge granted summary judgment for the Company under Rule 56, Federal Rules of Civil Procedure, 28 U. S.C.A.
 
 
 8
 The Company defends this action upon two grounds: first, that the arbitration provisions of the contract are in no way applicable to the matter of discharging or refusing to reinstate the fifteen employees released for misconduct during the strike; second, if the arbitration provisions are applicable, the matter of discharge or reinstatement is within the exclusive jurisdiction of the National Labor Relations Board which renders an arbitration agreement on this matter unenforceable. The trial court held the first defense good and declined to consider the second. It reasoned that the parties intended by the contract to submit grievances to arbitration only where the operations of the Company were normal; that the employees were not in the employ of the Company since the strike precluded normal operations; and that the language of the Settlement Agreement implied that the Company should unilaterally decide who was "law fully entitled to reinstatement." The pertinent portion of the trial judge's memorandum opinion is printed in the margin.[3]
 
 
 9
 Since we disagree with the district court's opinion that no arbitration would lie to the matter at bar, we must also decide the issue of pre-emption raised by the appellee.
 
 
 10
 I. Was the Dispute Arbitrable?
 
 
 11
 Initially, the appellant earnestly contends that the question of arbitrability should be determined by the arbitration board in this case, saying that the lower court should not have decided the issue of arbitrability in view of the contract provision that "any grievance" could be arbitrated. While there is much to say in favor of appellant's argument,[4] the courts have, with practical uniformity, held the question of arbitrability to be an issue for the courts — that is, the courts decide if the particular grievance is arbitrable under the terms of the collective bargaining contract.[5] This is true even where the contract specifies that any controversy relating to the meaning or interpretation or application of the contract is arbitrable.[6] Perhaps, if the contract expresses that the arbitrators will decide arbitrability, the courts would refrain from a decision.[7] We will not delve into the intricacies or the merits of either side of this problem.
 
 
 12
 The general policy considerations of promoting harmonious interplay and propitious relations between labor and management, which will achieve industrial peace, have been given their full weight in the interpretation of collective bargaining contracts. With this search for true tranquillity in the industrial world ever in mind, the courts have crystalized from the supersaturation of litigation since 1947 several "rules of construction" in the interpretation of collective bargaining contracts to arbitrate. We consider the general rule to be that a dispute between labor and management is arbitrable where the dispute is specifically contracted to be arbitrable or generally where the contract expresses a broad arbitration policy, i. e., a general arbitration clause;[8] but controversies are not arbitrable where the controversy in question is specifically excluded, where because of a listing of many arbitrable incidences the instant controversy is impliedly excluded,[9] and where the controversy or grievance concerns violation of a "no strike clause."[10]
 
 
 13
 In the case at bar, not only does the contract specifically state that grievances arising from discharges may be arbitrated but it also has the general provision that "any difference" arising "between the Company and any employee as to the meaning, application or interpretation of the provisions" of the contract may constitute a grievance and, if not settled, may be arbitrated. We cannot agree with the trial court that the parties contemplated the contract to cover only "normal operations free from strike," nor can we agree that the striking employees were not in the employ of the Company.[11] The contract implies a broader, even an inclusive, coverage. The preamble of the contract states:
 
 
 14
 "Article I — Preamble
 
 
 15
 "The intent and purpose of the parties hereto is that this agreement will promote, improve, and maintain industrial economic and harmonious relations between the Union and the Company and to set forth herein the basic agreement covering rates of pay, hours of work, and conditions of employment to be observed between the Company and its employees."
 
 
 16
 We cannot interpret the contract to say that grievances arising from a discharge of employees for strike misconduct, where the employees were striking under the terms of the contract, would be impliedly excluded from arbitration. Neither did the settlement memorandum impliedly exclude from arbitration any arbitrable matter in the contract. The question of which strikers are "lawfully entitled to reinstatement" must be considered an arbitrable matter rather than left to the unilateral determination of the Company in order to preserve the terms of the contract relating to seniority, retirement, etc., and to carry out its general intent and purpose.
 
 
 17
 II. Exclusiveness of Jurisdiction.
 
 
 18
 The second ground of defense presents the question of whether parties to a collective bargaining agreement may contract to submit matters involving unfair labor practices[12] to private arbitrators with such contract enforceable by the federal courts under section 301 of the Act, or whether all controversies concerning unfair labor practices are within the exclusive jurisdiction of the National Labor Relations Board which pre-empts the federal courts from acquiring jurisdiction over a contract violation which happens also to be an unfair labor practice. This question has not been raised previously in this Court, nor has it been decided by the Supreme Court.
 
 
 19
 The appellee asserts that, since the discharges were made because of union activity — protected or unprotected — which presents the question of unfair labor practice vel non,[13] and since the exclusive jurisdiction of the Board pre-empts state courts and agencies from deciding issues involving such unfair labor practices,[14] certainly the parties cannot by contract give to private arbitrators more jurisdiction than is afforded to state courts. However, the appellee overlooks the obvious distinction between contract provisions and matters committed exclusively to the Board. If an arbitrable contract violation encompasses an unfair labor practice, the majority of the courts have held that arbitration is proper to decide all matters not included in the pre-emptive area. Likewise, the better-reasoned cases hold that even where the aggrieved incident or act constitutes both a contract violation and an unfair labor practice, particularly concerning a substantive contract right such as employment or pay, the federal district courts will not be deprived of jurisdiction to grant relief as to the breach of contract, the other aspect being left to the Board.[15]
 
 
 20
 However, in this case, we must go one step further because substantially the same conduct here involved would constitute a violation of the contract and an unfair labor practice. The distinguishing point is that, while an act may be both an arbitrable contract violation and an unfair labor practice, a "breach of contract is not an unfair labor practice"; the former is enforced by the courts, the latter by the Board;[16] the former gives to private parties a remedy, the latter uses a private right to effectuate the declared policies of the Act;[17] the former gives a certainty of decision, the latter leaves decision discretionary.[18] Section 10(a) of the Act[19] states that the power of the Board over unfair labor practices "shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, law, or otherwise." Will the submission of a contract violation, which is also an unfair labor practice, to arbitration "affect" this power of the Board? Certainly not. Since the Board's power is plenary in all respects, "neither the existence of an agreement to arbitrate nor a rendered award can preclude the Board from exercising its statutory jurisdiction."[20] But certainly an award or an agreement to arbitrate may serve to temporarily assuage the aggrieved party and afford validity to contract terms (even including unfair labor practices) until a final disposition of the matter of unfair labor practice be made by the Board. Even though the Board is not bound by an arbitration award, it may find that compliance with the award is not violative of the Act,[21] or it may even, in the exercise of its discretionary power, decline action because an award has been made or arbitration is possible.[22]
 
 
 21
 Such a practice may be at least a partial answer to the commonly known fact that the National Labor Relations Board has presented to it such a multitude of complaints and grievances that decisions are slow in forthcoming and many cases are refused review.[23] State tribunals have no jurisdiction in many areas of unfair labor practices even though the Board, because of its overflowing docket, has voluntarily relinquished jurisdiction but failed to cede jurisdiction to a state agency.[24] But "we cannot believe that Congress intended to create a no man's land where voluntary arbitration is barred and the national labor relations board may be too overburdened to enter."[25] Certainly, if an otherwise arbitrable controversy happens also to be an unfair labor practice, the parties should not be forced to abandon their contract right and be relegated "to the slow and creaking procedure which, like a wounded snake, has dragged its slow length along, sans bargaining, sans labor peace, sans everything but pride of opinion, ill temper and frustration."[26] We think it too technical and obtrusive to attempt a division of the present controversy into a contract part and an unfair labor part. Such a division is merely a play on words. It is better to call the spade and say that enforcement of a contract to arbitrate grievances is different from an adjudication of an unfair labor practice by the National Labor Relations Board. This will prevent the nebulous determination of what part is contract and what part is unfair labor practice when the one part constitutes both.
 
 
 22
 We believe that this decision is required by the teaching of the recent Lincoln Mills cases.[27] While these cases did not concern an issue which was both contracted to be arbitrable and concerned unfair labor practice, they did establish two broad principles: first, that the United States district courts have the unequivocal statutory power to decree specific performance of collective bargaining contracts to arbitrate; and, second, that private arbitration in the labor-management field is to be afforded broad liberalities. In this connection, the Supreme Court stated at 353 U.S. 455, 456, 457, 77 S.Ct. 917:
 
 
 23
 "Plainly the agreement to arbitrate grievance disputes is the quid pro quo for an agreement not to strike. Viewed in this light, the legislation does more than confer jurisdiction in the federal courts over labor organizations. It expresses a federal policy that federal courts should enforce these agreements on behalf of or against labor organizations and that industrial peace can be best obtained only in that way.
 
 
 24
 * * * * * *
 
 
 25
 "It seems, therefore, clear to us that Congress adopted a policy which placed sanctions behind agreements to arbitrate grievance disputes, by implication rejecting the common-law rule, discussed in Red Cross Line v. Atlantic Fruit Co., 264 U.S. 109 [44 S.Ct. 274, 68 L.Ed. 582] against enforcement of executory agreements to arbitrate. We would undercut the Act and defeat its policy if we read § 301 narrowly as only conferring jurisdiction over labor organizations.
 
 
 26
 "The question then is, what is the substantive law to be applied in suits under § 301(a)? We conclude that the substantive law to apply in suits under § 301(a) is federal law, which the courts must fashion from the policy of our national labor laws. See Mendelsohn, Enforceability of Arbitration Agreements Under Taft-Hartley Section 301, 66 Yale L.J. 167. The Labor Management Relations Act expressly furnishes some substantive law. It points out what the parties may or may not do in certain situations. Other problems will lie in the penumbra of express statutory mandate. Some will lack express statutory sanction but will be solved by looking at the policy of the legislation and fashioning a remedy that will effectuate that policy. The range of judicial inventiveness will be determined by the nature of the problem. See Board of Commissioners of Jackson County v. United States, 308 U.S. 343, 351 [60 S.Ct. 285, 288, 84 L.Ed. 313]. Federal interpretation of the federal law will govern, not the state law. Cf. Jerome v. United States, 318 U.S. 101, 104 [63 S.Ct. 483, 485, 87 L.Ed. 640]. But state law, if compatible with the purpose of § 301, may be resorted to in order to find the rule that will best effectuate the federal policy. See Board of Commissioners of Jackson County v. United States, supra, [308 U.S. at pages 351-352, 60 S.Ct. at pages 288-289]. Any state law applied, however, will be absorbed as federal law and will not be an independent source of private rights." Textile Workers Union of America v. Lincoln Mills, 1957, 353 U.S. 448, 455-457, 77 S.Ct. 912, 918, 1 L.Ed.2d 972.
 
 
 27
 "The range of judicial inventiveness will be determined by the nature of the problem." Within the spirit of the Lincoln Mills cases, and consonant with other well-reasoned decisions, the fact that the conduct here involved may constitute an unfair labor practice will not prevent it from being also an arbitrable contract violation.
 
 
 28
 Reversed and remanded.
 
 
 
 Notes:
 
 
 [1]
 29 U.S.C.A. § 151 et seq
 
 
 [2]
 Title III, Section 301, National Labor Relations Act, 29 U.S.C.A. § 185
 
 
 [3]
 "* * * other than is contained in such quoted Section [the section giving power to the Company to employ and discharge], there is nothing in the agreement that in so many words prohibits Company from discharging such employees. But the spirit of the Agreement seems to be that restrictions are intended, in that under Section 13, Article XII, of the Agreement, if an employee is discharged, the cause of his discharge must be made known to him. Also in that under Articles IV and V, the discharge of an employee may constitute a `grievance' covered by the `Grievance Procedure' and by the provisions (Articles IV and V) covering Arbitration
 "It is probably true that under the normal operations under such Agreement had any of the persons employed thereunder by Company been discharged by Company, such discharge would have been covered by the Grievance Procedure and Arbitration provisions in Articles IV and V.
 "But operations were not normal. There were negotiations between Union and Company for higher wages for such employees, and there were disagreements, followed by a strike of such employees. For more than forty (40) days, the persons employed under the Agreement did no work for Company, were paid no wages by Company, and were not subject to the orders of Company — indeed, they were not in the employ of Company. Company did not want to re-employ some of such persons because of alleged misconduct by them during the strike. So situated, the parties executed the Settlement Memorandum, increasing wages and ending the strike. In such Settlement Memorandum, former employees are referred to as `strikers', `striking employees', and `employees', and presumably because the misconduct charged against some of them was very seriously regarded by Company, it is provided that only `Strikers who are lawfully entitled to reinstatement shall be reinstated.'
 "There is nothing said in the Settlement Memorandum about how the matter of who was guilty of misconduct and who was `lawfully' entitled to be reinstated should be determined. There is nothing said about arbitrating the matter either under the Agreement or otherwise. As stated, it may be that it was intended that Company should decide the matter.
 "I do not believe the Agreement and the Settlement Memorandum, when construed together or separately, mean that the matter is to be arbitrated under the provisions of the Agreement."
 
 
 [4]
 See 1951 Majority Report, Committee on Improvement of Administration of Union-Employer Contracts, Section of Labor Relation Law, American Bar Association; Justin, Arbitrability and the Arbitrator's Jurisdiction, Management Rights and the Arbitration Process (1956); Davey, Discussion, Arbitrability and the Arbitrator's Jurisdiction, Management Rights and the Arbitration Process (1956); Pirsig, Some Comments on Arbitration Legislation and the Uniform Act, 10 Vanderbilt L.Rev. 685 (1957); Cox, Some Lawyers' Problems in Grievance Arbitration, 40 Minn.L Rev. 41 (1955); Clifton, Arbitration and Arbitrability, 3d Annual Conf. on Labor N.Y.U. 187 (1950). See, also, many articles in the Labor Arbitration Reports published by the Bureau of National Affairs, arbitration cases found in the American Labor Arbitration Awards published by Prentice Hall, and material in The Arbitration Journal, published by the American Arbitration Association
 
 
 [5]
 See Annotation, 24 A.L.R.2d 752, 766
 
 
 [6]
 E. g., Engineers Ass'n v. Sperry Gyroscope Co., etc., 2 Cir., 1957, 251 F.2d 133; Local No. 149, etc. v. General Electric Company, 1 Cir., 1957, 250 F.2d 922; Goodall-Sanford, Inc., v. United Textile Workers, 1 Cir., 1956, 233 F.2d 104; Wilson Brothers v. Textile Workers Union, D.C.S.D.N.Y.1954, 132 F.Supp. 163; Textile Workers Union of America v. American Thread Co., D.C.D.Mass.1953, 113 F.Supp. 137; Philadelphia Marine Trade Ass'n v. International Longshoremen's Ass'n, 382 Pa. 326, 115 A.2d 633, certiorari denied 350 U.S. 843, 76 S.Ct. 84, 100 L.Ed. 751; McCarroll v. Los Angeles County District Council of Carpenters, Cal.1957, 315 P.2d 322
 
 
 [7]
 See dicta in International Union, etc. v. Benton Harbor Mal. Ind., 6 Cir., 1957, 242 F.2d 536; Philadelphia Marine Trade Ass'n v. International Longshoremen's Ass'n, note 6 supra; McCarroll v. Los Angeles County District Council of Carpenters, note 6 supra. However, in Monument Mills v. Textile Workers Union, D.C.D.Mass.1957, 152 F.Supp. 429, the court held that arbitrability was for the arbitrators in view of the language of the collective bargaining contract
 
 
 [8]
 American Lava Corp. v. Local Union No. 222, etc., 6 Cir., 1958, 250 F.2d 137; Goodall-Sanford, Inc., v. United Textile Workers, 1 Cir., 1956, 233 F.2d 104; Wilson Bros. v. Textile Workers D.C.N.Y.1954, 132 F.Supp. 163
 
 
 [9]
 Local No. 149, etc. v. General Electric Company, 1 Cir., 1957, 250 F.2d 922; United Furniture Workers, etc. v. Little Rock Furniture Mfg. Co., D.C.E.D.Ark. 1957, 148 F.Supp. 129
 
 
 [10]
 International Union, etc. v. Benton Harbor Mal. Ind., 6 Cir., 1957, 242 F. 2d 536; Cuneo Press v. Kokomo Paper Handlers' Union No. 34, 7 Cir., 1956, 235 F.2d 108; Hoover Motor Exp. Co. v. Teamsters, Chauffeurs, etc., 6 Cir., 1954, 217 F.2d 49; Markel Electric Prod. v. United Electrical, R. & M. Wkrs., 2 Cir., 1953, 202 F.2d 435; United Electrical, R. & M. Wkrs. of America v. Miller Metal Prod., 4 Cir., 1954, 215 F.2d 221
 
 
 [11]
 Section 2(3) of the Act [29 U.S.C.A. § 152(3)]; N.L.R.B. v. Mackay Radio & Telegraph Co., 1935, 304 U.S. 333, 345, 58 S.Ct. 904, 82 L.Ed. 1381; N.L.R.B. v. U.S. Cold Storage Corp., 5 Cir., 1953, 203 F.2d 924, 927
 
 
 [12]
 Section 8 of the Act [29 U.S.C.A. § 158]
 
 
 [13]
 Appellee's contentions are generally that in discharging the fifteen employees the appellee is either guilty of unfair labor practice under section 8(a) (1) or (3) [29 U.S.C.A. § 158(a) (1) or (3)], in which event the employees' strike activities would be "protected," or the appellee is not guilty of unfair labor practice, in which event the strike conduct is an "unprotected" activity; and, in either event, the N.L.R.B. has exclusive jurisdiction to decide
 
 
 [14]
 The following cases held that the jurisdiction of the Board in the field of unfair labor practice would pre-empt state agenciesor private arbitrators from acting: N.L.R.B. v. International Union, 7 Cir., 1952, 194 F.2d 698; N.L.R.B. v. Wagner Iron Works, 7 Cir., 1955, 220 F.2d 126; McAmis v. Panhandle Eastern Pipe Line Co., Mo.App., 1954, 273 S.W.2d 789.
 Where union activity violated state laws and was also within the scope of the National Labor Relations Act, state enforcement was held to be void. Garner v. Teamsters, etc., Union, 1953, 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228; Capital Service, Inc., v. N.L.R.B., 1954, 347 U.S. 501, 74 S.Ct. 699, 98 L.Ed. 887; Weber v. Anheuser-Busch, Inc., 1955, 348 U.S. 468, 75 S.Ct. 480, 99 L.Ed. 546.
 
 
 [15]
 See Independent Petroleum Workers, etc. v. Esso Standard Oil Co., 3 Cir., 1956, 223 F.2d 401; United Electric, etc., Local 259 v. Worthington Corporation, 1 Cir., 1956, 236 F.2d 364. Note the late Chief Judge Parker's opinion in Textile Workers, etc. v. Arista Mills Co., 4 Cir., 1951, 193 F.2d 529, 533-534, where he stated: "* * * We think it clear that parties may not by including a provision against unfair labor practices in a bargaining agreement vest in the courts jurisdiction to deal with matters which Congress has placed within the exclusive jurisdiction of the National Labor Relations Board. Where, however, substantive rights with respect to such matters as positions or pay are created by bargaining agreements, there is no reason why the courts may not enforce them even though the breach of contract with regard thereto may constitute also an unfair labor practice within the meaning of the act. As said by Chief Judge Jones in Reed v. Fawick Airflex Co., D.C., 86 F. Supp. 822, 823-824: `It is clear that this Court has no jurisdiction to entertain a petition for relief as to unfair labor practices. Whether acts which constitute unfair labor practices under the statute have been committed by an employer and, if so, what remedies will be prescribed for the employees are matters within the exclusive jurisdiction of the Board. * *
 "`If, however, a particular act is the subject of an agreement between employer and union and the union sues for breach of that contract, the District Court could not be ousted of its jurisdiction to hear and determine the case merely because the act constituted not only breach of contract but also an unfair labor practice.'
 "Our conclusion on the first question is that, while there was no jurisdiction in the court to grant relief with respect to any refusal to bargain, which, if established, would be an unfair labor practice within the exclusive jurisdiction of the Labor Board, Amazon Cotton Mill Co. v. Textile Workers Union of America, supra [4 Cir., 167 F.2d 183], the court did have jurisdiction to grant relief with respect to the alleged breaches of contract relating to refusal to accord to striking employees the status and rights to which they were entitled under the bargaining agreement."
 
 
 [16]
 See Association of Westinghouse Salaried Employees v. Westinghouse Electric Co., 1955, 348 U.S. 437, at page 443, footnote 2, 75 S.Ct. 489, at page 492, 99 L.Ed. 510, where the court stated: "It is significant, however, that breach of contract is not an `unfair labor practice.' A proposal to that end was contained in the Senate bill, but was deleted in conference with the observation: `Once parties have made a collective bargaining contract the enforcement of that contract should be left to the usual processes of the law and not to the National Labor Relations Board.' H.R.Conf.Rep. No. 510, 80th Cong., 1st Sess. 42."
 
 
 [17]
 E. g., N.L.R.B. v. Olaa Sugar Co., 9 Cir., 1957, 242 F.2d 714; Superior Engraving Co. v. N.L.R.B., 7 Cir., 1950, 183 F.2d 783, certiorari denied 340 U.S. 930, 71 S.Ct. 490, 90 L.Ed. 671; N.L.R.B. v. Hudson Motor Car Co., 6 Cir., 1943, 136 F.2d 385
 
 
 [18]
 E. g., N.L.R.B. v. Olaa Sugar Co., note 17, supra; N.L.R.B. v. Stoller, 9 Cir., 1952, 207 F.2d 305; N.L.R.B. v. Swinerton, 9 Cir., 1953, 202 F.2d 511, certiorari denied 346 U.S. 814, 74 S.Ct. 24, 98 L. Ed. 341
 
 
 [19]
 29 U.S.C.A. § 160(a)
 
 
 [20]
 United Electrical R. & M. Wkrs. of America v. Worthington Corp., 1 Cir., 1956, 236 F.2d 364, 368. See, also, N.L. R.B. v. Wagner Iron Works, etc., note 14, supra
 
 
 [21]
 Spielberg Manufacturing Co., 112 N.L. R.B. 1080 (1955)
 
 
 [22]
 See Spielberg Manufacturing Co., supra note 21; Crown Zellerbach Corp., 95 N.L.R.B. 753 (1951); Note, 69 Harv.L. Rev. 725, 731-36 (1956). As cited in United Electrical, R. & M. Wkrs. of America v. Worthington Corp., 1 Cir., 1956, 236 F.2d 364, 368
 
 
 [23]
 See Note, 69 Harv.L.Rev. 725, 729, et seq
 
 
 [24]
 See Guss v. Utah Labor Relations Board, 1957, 353 U.S. 1, 77 S.Ct. 598, 1 L.Ed.2d 601; Amalgamated Meat Cutters, etc. v. Fairlawn Meats, 1957, 353 U.S. 20, 77 S.Ct. 604, 1 L.Ed.2d 613; San Diego Building Trades Council v. Garmon, 1957, 353 U.S. 26, 77 S.Ct. 607, 1 L.Ed.2d 618
 
 
 [25]
 As stated in Post Publishing Co. v. Cort, 334 Mass. 199, 134 N.E.2d 431, 435
 
 
 [26]
 N.L.R.B. v. Roscoe Skipper, Inc., 5 Cir., 1954, 213 F.2d 793, per Chief Judge Hutcheson in footnote 4, at page 794
 
 
 [27]
 Textile Workers Union of America v. Lincoln Mills, 1957, 353 U.S. 448, 77 S. Ct. 912, 1 L.Ed.2d 972; Goodall-Sanford, Inc., v. United Textile Workers, 1957, 353 U.S. 550, 77 S.Ct. 920, 1 L.Ed.2d 1031; General Electric Co. v. Local Union 205, United Electrical Workers, 1957, 353 U.S. 547, 77 S.Ct. 921, 1 L.Ed.2d 1028. Cf. Item Co. v. New Orleans Newspaper Guild, 5 Cir., 256 F.2d 855
 
 
 
 29
 CAMERON, Circuit Judge.
 
 
 30
 I concur in the result.