**CUNEO EASTERN PRESS, INC., OF PENNSYLVANIA**

v.

**BOOKBINDERS AND BINDERY WOMEN'S UNION, LOCAL NO. 2 and Harold A. Schulz.**

Civ. A. No. 26486.

United States District Court
E. D. Pennsylvania.

Sept. 14, 1959.

Kleinbard, Bell & Brecker, Philadelphia, Pa., for plaintiff.

Wilderman & Markowitz, Philadelphia, Pa., for defendants.

LORD, District Judge.

Pursuant to § 301 of the Labor Management Relations Act of 1947, 61 Stat. 156, 29 U.S.C.A. § 185, and the Declaratory Judgments Act, 62 Stat. 964, 28 U.S.C.A. §§ 2201 and 2202, Cuneo Eastern Press, Inc. ("Employer") seeks a judicial determination of its rights under a collective bargaining agreement. Specifically, Employer seeks to permanently enjoin the defendant, Bookbinders and Bindery Women's Union, Local No. 2 and its President, Harold A. Schulz ("Union"), from submitting a dispute over a sheeting machine to "final and binding" arbitration.

Presently before the Court for disposition is Union's motion for summary judgment. The record before the Court consists of a complaint, answer and Union's affidavit and exhibits filed in support of its motion. Upon oral argument the respective parties agreed that no factual issues were involved and that the Court might make an adjudication upon the present record.

From that record the following uncontroverted facts appear. A collective bargaining agreement was executed on June 5, 1958 to govern the relations of the parties from March 16, 1958 to April 17, 1960. During 1958, Employer en-

tered into negotiations to purchase a so-called "sheeting machine." This machine, which has been partially installed at Employer's Philadelphia plant, will carry out an operation not previously performed at that location. The function of the sheeting machine is to take rolls of unprinted paper and render them into stacks of paper cut for use on sheet-fed printing presses. That is, in one continuous operation the paper is to be cut into designated lengths and stacked into usable piles of paper sheets.

On March 24, 1959, Union by letter to Employer claimed jurisdiction over the operation of the sheeting machine. Subsequent negotiations resulted in the Employer taking the position that the machine was not covered by the collective bargaining agreement and that the operation of the machine was being assigned to an employee represented by another union. Taking a contrary position, Union set about to arbitrate the matter in accordance with Article IX of the agreement entitled "Settlement of Disputes." In pursuance to that Article, Union by letters dated May 6, 1959 advised both the Employer and the permanent arbitrator, William E. Simkin, that it was submitting the matter to arbitration. Maintaining that the dispute was not an arbitrable issue, the Employer instituted the present action.

It is to be noted that arbitration under the agreement can be invoked upon the "written request of either party" (Article IX, § 2) and the arbitrator can settle the controversy even if the other party "fails to appear or to submit testimony" (Article IX, § 4). The respective parties to this action have agreed to maintain the status quo pending a final adjudication by this Court.

This Court has jurisdiction of the instant action by virtue of § 301 of the Labor Management Relations Act, 61 Stat. 156, 29 U.S.C.A. § 185. Textile Workers Union of America v. Lincoln Mills of Alabama, 1957, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972. While the latter case involved the right of a union to enforce a contractual obligation to arbitrate a dispute, the fact that here the Employer seeks to prevent arbitration in no way derogates from the jurisdiction of this Court. For a discussion of this question see the opinion of Judge Wyzanski in New Bedford Defense Products Division, etc. v. Local No. 1113, D.C.D.Mass.1958, 160 F.Supp. 103, affirmed 1 Cir., 1958, 258 F.2d 522. See also Boston Mutual Life Ins. Co. v. Insurance Agents' International Union (AFL–CIO), 1 Cir., 1958, 258 F.2d 516; Armstrong-Norwalk Rubber Corp. v. Local Union No. 283, D.C.D.Conn.1958, 167 F.Supp. 817; American Stores Co. v. Johnston, D.C.S.D.N.Y.1959, 171 F.Supp. 275.

The issue raised in the instant matter is whether the plaintiff Employer has violated Article VI of the agreement by failing to submit to arbitration Union's claim that the work of operating the sheeting machine should be assigned to members of the Union.

Union asserts that the question of arbitrability under this particular agreement should be left to the arbitrator to determine. It must be noted here, however, that the question of whether a dispute is subject to arbitration (arbitrable) under the terms of a collective bargaining agreement is—by the overwhelming weight of judicial authority—for the court to determine in the first instance. Local No. 149, etc., v. General Electric Co., 1 Cir., 1957, 250 F.2d 922, certiorari denied 1957, 356 U.S. 938, 78 S.Ct. 780, 2 L.Ed.2d 813; Engineers Association v. Sperry Gyroscope Co., 2 Cir., 1957, 251 F.2d 133; Lodge No. 12, etc. v. Cameron Iron Works, 5 Cir., 1958, 257 F.2d 467; United Steelworkers of America v. American Mfg. Co., 6 Cir., 1959, 264 F.2d 624. Of course, the parties to a collective bargaining agreement can make provision in their contract for a tribunal to determine the initial question of arbitrability. See International Union, etc. v. Westinghouse Electric Corp., 3 Cir., 1959, 268 F.2d 352, wherein the parties expressly provided for the court to determine arbitrability in the event of disagreement. Likewise, if the parties

958

to a collective bargaining agreement have "unequivocally expressed a desire that the arbitrators shall determine their own jurisdiction," that issue will be withdrawn from the courts. American Stores Co. v. Johnston, D.C.S.D.N.Y.1959, 171 F.Supp. 275, 277, collecting cases.

The labor agreement under present consideration does not expressly give to the arbitrator jurisdiction to determine what issues are arbitrable in the first instance. Basically, the present agreement calls for arbitration of "any controversy" relating to the "interpretation or enforcement" of the agreement. Article IX, §§ 1 and 2. A somewhat similar provision has been held not to confer upon the arbitrator the authority to determine his own jurisdiction, i. e., the question of arbitrability. Lodge No. 12, etc. v. Cameron Iron Works, 5 Cir., 1958, 257 F.2d 467, 470. See also American Stores Co. v. Johnston, supra [171 F.Supp. 276], wherein a clause calling for arbitration of "any differences or misunderstandings" was held not to confer the issue of arbitrability upon the arbitrator.

The issue of arbitrability depends upon an interpretation of the agreement. Article IX, "Settlement of Disputes", provides for a three-stage grievance procedure, the last of which is submission to a named arbitrator whose decision is to be "final and binding" upon the parties. As pertinent here, Article IX provides:

"1. *If any controversy arises as to the interpretation* or enforcement of this Agreement, work shall proceed in a normal manner while the controversy is being disposed of.

"2. *Should any controversy* arise between the Employer and the Union, * * * *as to the construction* to be placed upon the scale of wages attached hereto, *any clause of the Agreement, or alleged violation thereof,* such differences or dispute shall be promptly settled in the following manner." (Emphasis supplied.)

Article VI, entitled "Complement of Employees", after designating the employee complement on specific types of machines, provides in § 11:

"In the event of the *introduction of new processes or new machinery,* the complement of men required and other conditions of work shall be tentatively determined by mutual agreement before operation, and after a trial period mutually agreed upon those matters shall be finally determined. In determining the complement of men and other working conditions, it is agreed that recognition shall be given to the practices already established in other union plants throughout the country *where such processes or machinery are already in use* and it is further agreed that the complement of men and other conditions of work shall be determined so as not to place the Employer in an unfavorable competitive position as compared to the other Union plants throughout the country. *Differences of opinion, if any, shall be settled in accordance with the provisions of Article IX of this Agreement."* (Emphasis supplied.)

■ Both parties agree that the sheeting machine is a *new machine.* The Employer contends however, that Article VI, § 11 "could never have been intended to cover equipment performing operations not theretofore performed at the plant" and that "the only reasonable conclusion is that the Arbitrator under this contract is limited to operations and equipment of the kind specifically stipulated in the Agreement." Union contends however, that "this machine would perform functions identical to functions presently being performed by members of defendant union on other machines." This is the "controversy" in the instant case.

Article VI is very broad in its coverage and appears to include within its sections every piece of machinery within the contemplation of the parties at the time of the execution of the contract. It seems clear that by § 11 the parties recognized the possibility of the "introduc-

tion of new processes or new machinery" and consequently inserted a provision to cover this contingency.

Article IX is also very broad and provides for arbitration whenever "any controversy" arises as to *"any clause of the Agreement,* or alleged violations thereof." The specific reference to arbitration of "differences of opinion" by virtue of Article VI, § 11, lends support to the conclusion that the matter should be arbitrated in accordance with the agreement. Further, the agreement clearly indicates that the parties intended the grievance procedure of Article IX to have a paramount role in the settlement of disputes. Article VIII, the "General Provisions" section of the agreement provides in § 15:

"Both parties agree that they will give prompt attention to disputes and will in good faith endeavor to settle differences by conciliation in the manner hereinafter set forth."

██ Arbitration is to be encouraged in labor disputes. Where the *agreement* expresses a "broad arbitration policy" a dispute should be decided by the arbitrator. In Lodge No. 12, etc. v. Cameron Iron Works, 5 Cir., 1958, 257 F.2d 467, at page 471, the court stated:

"We consider the general rule to be that a dispute between labor and management is arbitrable where the dispute is specifically contracted to be arbitrable *or generally where the contract expresses a broad arbitration policy,* i. e., a general arbitration clause; but controversies are not arbitrable where the controversy in question is specifically excluded, where because of a listing of many arbitrable incidences the instant controversy is impliedly excluded, and where the controversy or grievance concerns violation of a 'no strike clause.'

"In the case at bar * * * the contract * * * has the *general provision* that *'any difference'* arising 'between the Company and any employee as to the meaning, application *or interpretation of the provisions'* of the contract may constitute a grievance and, if not settled, may be arbitrated." (Emphasis supplied.)

For the foregoing reasons, it is ordered that the defendants' motion for summary judgment be and the same is hereby granted.