INTERNATIONAL ASSOCIATION OF MACHINISTS, AFL–CIO, Plaintiff,

v.

INTERNATIONAL BROTHERHOOD OF FIREMEN & OILERS, AFL–CIO, Defendant.

Civ. A. No. 8423.

United States District Court
N. D. Georgia,
Atlanta Division.

Nov. 13, 1964.

Robert L. Mitchell, Atlanta, Ga., for plaintiff.

J. R. Goldthwaite, Jr., Atlanta, Ga., for defendant.

MORGAN, District Judge.

The present case arises out of a jurisdictional dispute between the plaintiff, the International Association of Machinists, AFL–CIO (hereinafter referred to as I.A.M.) and the defendant, the International Brotherhood of Firemen and Oilers, AFL–CIO (hereinafter referred to as F.O.I.), which dispute grows out of National Labor Relations Board certifications issued to the two unions in February, 1958, in representation cases. There were three parties affected by the Board certifications—plaintiff, defendant, and Carling Brewing Company.

The defendant has moved to dismiss upon the principal ground that the certification orders of the National Labor Relations Board created the conflict between the two unions, and that the plaintiff should look to the National Labor Relations Board to clarify and avoid the problem which the Board, according to the defendant, created, rather than come to this Court which allegedly has no jurisdiction to modify orders of the National Labor Relations Board with respect to certification of bargaining representatives and bargaining units; and upon the second basis that this Court has no jurisdiction to award complete and ultimate relief which would resolve all conflict between all the parties to the dispute.

In February, 1958, three elections were held by the National Labor Relations Board, as a result of which three unions received certifications in three different units of employees at Carling's Atlanta plant. The plaintiff was certified by the Board as collective bargaining representative of a unit of employees described as follows:

"All maintenance department employees, electrical maintenance employees of the employer's Atlanta plant, but excluding production em-

ployees, firemen, oilers, refrigeration engineers, professional and technical employees, guards, and supervisors as defined in the Act as amended."

The defendant union was certified as representative for the following unit:

"All firemen, oilers, engineers and refrigeration engineers, but excluding all production and maintenance employees, maintenance mechanics in the maintenance department, clerical, supervisory as defined in the National Labor Relations Act, guards, and professional employees."

The Brewery Workers Union was certified as representative of the production employees but is not affected by this proceeding.

Following its certification, the F.O.I. had entered into a contract with Carling in March, 1958, parts of which were job descriptions assigning the "maintenance" of various systems in the plant to the engineers and refrigeration engineers. No such provision was included in the Machinists contract. Carling had assigned the operation, maintenance and repair of certain systems in the plant to the defendant which resulted in the engineers and refrigeration engineers performing the maintenance and repair. Sometime thereafter, Atlanta District Lodge 46 of the I.A.M. claimed the maintenance and repair work on these systems and contended that its members, rather than employees in the powerhouse engineers unit, should be permitted to perform this maintenance and repair. After a grievance was filed with Carling by the I.A.M., it was agreed by Carling that in the future such work would be assigned to the Machinists employees.

When Machinists employees were assigned to install and repair equipment integral with the upstream systems that had originally been operated and maintained by the engineering employees, the F.O.I. immediately filed a grievance upon the assignment of this work to Machinists employees and the grievance was taken to arbitration. I.A.M. refused to participate in the arbitration, claiming that the certification issued by the National Labor Relations Board had given the Machinists union jurisdiction over the disputed work, and that an arbitrator did not have authority to modify that certification.

In any event, arbitrator William Pate found that the certifications issued by the National Labor Relations Board to the plaintiff and to the defendant contained nothing which would indicate any intention of the Board as to which unit should perform the disputed work to the exclusion of the other. It was his determination that the action of the employer in assigning certain work to employees is deemed to be the primary and controlling factor, thereby, in effect, stating that the disputed work belonged to the engineering unit.

At all times since arbitrator Pate's decision, Carling has assigned the disputed maintenance work to members of the engineering unit. However, both of these labor organizations were parties to a contract commonly known and described as the "AFL–CIO No-Raiding Agreement" which has been in effect between them since on or about June 9, 1954. The material portion of this no-raiding agreement provides as follows:

"5. Each of the parties hereto agrees to settle all disputes which may arise in connection with this agreement in accordance with the following procedure:

" '(a) Any union, a party hereto, which claims that any other union, a party hereto, (including any local of such a union) which is affiliated with the other federation, has violated the provisions of this agreement, shall immediately notify in writing the representative of the union complained against designated in accordance with Paragraph 4 of this agreement, and shall also notify the secretary-treasurer of the federation with which that union is affiliated.

" '(b) The authorized representatives of the unions involved shall

make every effort to settle the dispute.

" '(c) In the event the dispute is not settled within 15 days after the mailing of the notification provided for in Paragraph (a), the secretary-treasurer of the federations or their designated representatives shall meet to attempt to achieve compliance with this agreement.

" '(d) In the event that the authorized representatives of the unions involved are unable to settle the dispute within 15 days after the mailing of the notification provided for in Paragraph (a), either union or the secretary-treasurer of either federation may, not earlier than 5 days thereafter, submit the dispute to the impartial umpire herein provided for.

" '(e) In any dispute submitted to him in accordance with the provisions of this paragraph, the impartial umpire shall have jurisdiction only to determine whether the acts complained of constitute a violation of this agreement.'

"6. The parties hereto agree that the impartial umpire under this agreement shall be jointly appointed by the president of the Congress of Industrial Organizations and the president of the American Federation of Labor. The impartial umpire shall decide any case referred to him within 30 days unless an extension of time is agreed to by the parties to the dispute or is requested by the umpire and agreed to by the parties. *The decision of the impartial umpire in any case referred or submitted to him under the terms of this agreement shall be final and binding.*"

(Emphasis supplied by the Court.)

Following the defendant's efforts to secure the maintenance work in the Carling Brewing Company's Atlanta plant, the I.A.M. filed a complaint contending that the defendant was initiating a raid upon its employees and mainte-nance work in the plant in violation of the above-mentioned "No-Raiding Agreement" and contract between the parties. Mr. David Cole was designated as impartial arbitrator by the terms and provisions of the no-raiding agreement and contract in effect between the plaintiff and the defendant, and a hearing was held upon the complaint of I.A.M. Arbitrator Cole found that the defendant labor organization was guilty of violations of the no-raiding agreement and contract, stating in his order as follows:

"The understanding reached by the F.O.I. and the I.A.M. in 1958 was entirely clear. The Board's certifications were unequivocal and the employer also understood perfectly that the I.A.M. was to represent all maintenance employees. This is evident from the letter of the company's counsel of August 19, 1958, part of which is quoted above. This being so, each of these organizations was obligated by Sections 2 and 3 of the no-raiding agreement to do nothing that would disrupt or interfere with the other's established bargaining relationship and, in particular, the F.O.I. was under injunction not to interfere with the I.A.M.'s representation of all maintenance employees at this Atlanta plant.

"That the F.O.I. elsewhere represents employees who do maintenance work on the systems they operate is beside the point. Elsewhere it is common knowledge that the I.A.M. represents employees who do production work or who operate systems of the kinds here operated by the F.O.I. employees, but this would not, under the facts of this case, justify the I.A.M. in seeking to have such employees included in its bargaining unit. The I.A.M. would then be guilty of raiding the F.O.I. or the Brewery Workers.

"That an arbitrator ruled otherwise on a grievance raised under the F.O.I. agreement in 1958 with respect to certain maintenance work has been noted, *but since that arbi-*

*tration was conducted as the arbitrator stated primarily on the basis of the F.O.I. agreement, it is not necessarily inconsistent with this ruling under the no-raiding agreement.* (Underscoring supplied by the Court.) I must add, in all fairness, that the instant ruling is not even critical of what the arbitrator did in the earlier case. He operated under one set of criteria and I am operating under a different set.

"In this case, it must ·be found that the I.A.M. has an established bargaining relationship with the employer at the Atlanta plant covering all maintenance employees, and that the efforts of the F.O.I. to have certain types of maintenance work included within its bargaining unit run counter to the promises made by the F.O.I. in Sections 2 and 3 of the no-raiding agreement.

*"DECISION.*

"The acts of the International Brotherhood of Firemen and Oilers at the Atlanta plant of Carling Brewing Company, Inc., complained ·of by the International Association ·of Machinists constitute a violation ·of the no-raiding agreement.

"(Signed) David L. Cole,
 Impartial Umpire under
 AFL–CIO No-Raiding
 Agreement
"(Dated) August 15, 1960."

On August 29, 1963, the plaintiff in the above-styled case filed a motion for summary judgment and a motion for a judgment on the pleadings. On September 12, 1963, the defendant filed its motion for summary judgment also. The plaintiff, on August 8, 1963, filed a motion to strike a certain portion of the defendant's answer in which the defendant requested trial by jury of any or all of the issues in this case, contending that the plaintiff's action is one in equity for specific performance of a contract, thus being within that class of cases for which the right of trial by jury does not exist under the statutes of the United States or its Constitution. Inasmuch as the case will be disposed of by a consideration of the respective motions for summary judgment above referred to, the Court does not deem it necessary to consider the merits of the plaintiff's motion to strike.

The question which must be determined is whether this Court has jurisdiction over the matters involved in this case. The defendant strongly urges that no such jurisdiction exists but rather contends that the National Labor Relations Board has exclusive jurisdiction of the case.

Section 301 of the National Labor Relations Act, 29 U.S.C.A. § 185, provides in part as follows:

"(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act *or between any such labor organizations*, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

"(b) Any labor organization which represents employees in an industry affecting commerce as defined in this Act and any employer whose activities affect commerce as defined in this Act shall be bound by the acts of its agents. Any such labor organization may sue or be sued as an entity and in behalf of the employees whom it represents in the Courts of the United States. Any money judgment against a labor organization in a district court of the United States shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets."

In the case before us, the plaintiff invoked Section 301 of the Act to compel obedience by the defendant to

the decision of arbitrator Cole. To be consistent with congressional policy in favor of settlement of disputes by the parties through the machinery of arbitration, the judicial inquiry under Section 301 of the Labor-Management Relations Act, 29 U.S.C.A. § 185, must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance or did agree to give the arbitrator power to make the award he made. An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage. United Steelworkers of America v. Warrior & Gulf Navigation Company, 363 U.S. 574, 582, 583, 80 S.Ct. 1347, 4 L.Ed. 2d 1409.

▮ It seems to this Court that both sides in the present case agreed in the collective bargaining agreement to arbitrate grievances such as the one which has caused the dispute in the instant case and they gave the arbitrator power to make the award which he made. The function of the umpire in a case of this nature is to decide whether the acts complained of constitute a violation of the agreement, and this the umpire must do, irrespective of whether there are adequate or effective remedies to follow. If this Court were to give no effect to Section 301, the aim of the "no-raiding" agreement would be nullified and it would be, as the Seventh Circuit Court of Appeals puts it, "the same old familiar story where men enter agreements one party to which either knows in advance, or later seeks to escape because, there is no enforcing apparatus". It is inconceivable that Congress would have placed these coercive measures in the hands of parties to agreements if they were not intended to be used. United Textile Workers etc. v. Textile Workers Union, 258 F.2d 743.

Judge Medina held, in Livingston v. John Wiley & Sons, Inc., 2 Cir., 313 F.2d 52, that the Federal District Court had jurisdiction under the Labor-Management Relations Act, Section 301 thereof, of a proceeding by the union to compel an employer to submit grievances to arbitration. While this case did not involve necessarily a suit between two unions, it sets forth the view of the Second Circuit Court of Appeals concerning the jurisdiction of the Federal District Courts pursuant to Section 301 of the Act. See also Carey v. General Electric Company, 2 Cir., 315 F.2d 499.

The case of Retail Clerks International Association, Local Unions Nos. 128 and 633 v. Lion Dry Goods, Inc., 369 U.S. 17, 82 S.Ct. 541, 7 L.Ed.2d 503, dealt with the constitutionality and construction of Section 301(a) of the Labor-Management Relations Act, as to whether it conferred jurisdiction on Federal District Courts in actions for violation of a contract between the employer and the labor organizations. The Supreme Court held in that case that Section 301(a) of the Labor-Management Relations Act of 1947 (29 U.S.C.A., § 185(a)), which provides: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties", expresses a federal policy that Federal Courts should enforce such contracts on behalf of or against labor organizations and that industrial peace can best be obtained only in that way. It is well to note that the statute covers suits between any labor organizations as well as between a labor organization and an employer.

In view of this language and because of the above-cited authorities, this Court holds that it does have jurisdiction of this case.

I.A.M. in this case has not committed an unfair labor practice as yet, but it is interesting to note that district courts have been said to have jurisdiction to

grant relief as to the breach of contract even where an unfair labor practice has been committed. Judge Rives said in Lodge No. 12, District No. 37, International Association of Machinists v. Cameron Iron Works, Inc., 5 Cir., 257 F.2d 467, that:

"[T]he better-reasoned cases hold that even where the aggrieved incident or act constitutes both a contract violation and an unfair labor practice, particularly concerning a substantive contract right such as employment or pay, the federal district courts will not be deprived of jurisdiction to grant relief as to the breach of contract, the other aspect being left to the Board.

"However, in this case, we must go one step further because substantially the same conduct here involved would constitute a violation of the contract and an unfair labor practice. The distinguishing point is that, while an act may be both an arbitrable contract violation and an unfair labor practice, a 'breach of contract is not an unfair labor practice'; the former is enforced by the courts, the latter by the Board; the former gives to private parties a remedy, the latter uses a private right to effectuate the declared policies of the Act; the former gives a certainty of decision, the latter leaves decision discretionary.

\* \* \* \* \* \*

" '[W]e cannot believe that Congress intended to create a no-man's land where voluntary arbitration is barred and the national labor relations board may be too overburdened to enter.' Certainly, if an otherwise arbitrable controversy happens also to be an unfair labor practice, the parties should not be forced to abandon their contract right and be relegated 'to the slow and creaking procedure which, like a wounded snake, has dragged its slow length along, sans bargaining, sans labor peace, sans everything but pride of opinion, ill temper, and frustration.' "

A reading of Section 10(k) of the National Labor Relations Act, 29 U.S.C.A. § 160(k), reveals the emphasis which Congress has placed on voluntary adjustment of work assignment disputes, and dispels any notion that uniformity of decision is a paramount consideration in this area. For certainly the results reached in voluntary adjustment such as those in arbitration will not always be the same the Board would have reached if it had heard a particular case. Judge Medina stated in Local 33, International Hod Carriers Building and Common Laborers' Union of America v. Mason Tenders District Council of Greater New York, 2 Cir., 291 F.2d 496, at page 504:

"It is obvious from reading these sections that this statutory scheme does not purport to give the Board general supervisory powers over controversies between labor organizations relating to work assignments. The Board may act only when a charge has been filed, and a mere disagreement over work assignments is not enough to create an unfair labor practice. Before a labor organization can be said to have violated Section 8(b) (4) (D), it must have engaged in one of the activities proscribed in Section 8(b) (4) (i) and (ii). Here none of the labor organizations involved have engaged in any of these proscribed activities. There was no strike or threat of strike, no inducement or encouragement, nor any threat, coercion or restraint upon any employer or anyone else. Local 33 sought only to assert its union rights within the framework of the arrangement among the labor organizations which were parties to the alleged agreement, and by bringing this suit against the District Council and Local 23. \* \* \*

"We thus conclude that in a case such as the present one, where there is no likelihood whatever of conflict with the NLRB, there is no basis whatever for holding that the District Court lacks jurisdiction. \* \*

"If we were to decide that the

District Court lacked jurisdiction, we think we would emasculate Section 301(a) and leave the parties to contracts between labor organizations wholly at the mercy of those who wish to repudiate their bargains without having any valid reason to do so. This is the inevitable result if neither the NLRB nor the courts have power to afford redress. It is difficult for us to see how any such result, in the face of the plain language of Section 301(a), can be beneficial to labor".

While Judge Medina specifically refused to pass upon no-raiding agreements and the jurisdiction of District Courts in regard to these, nevertheless it seems to this Court that the implication is quite clear that if he were to consider them, the result would be the same. Under Section 8(b) (4) (D), it is an unfair labor practice for a labor organization to strike or threaten to strike for the purpose of forcing an employer to assign particular work to its members rather than to the members of another union, and when a violation of that section is charged, the Board is then empowered by Section 10(k) to hear and determine the jurisdictional dispute out of which the strike arose.

In Smith v. Evening News Association, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246, the Court held that the courts have jurisdiction under Section 301 of the Labor-Management Relations Act to entertain suits for breach of a collective bargaining agreement even when the conduct alleged to constitute the breach might also constitute an unfair labor practice cognizable by the NLRB under Sections 8 and 10 of the National Labor Relations Act.

 Congress, in enacting Section 301 of the Labor-Management Relations Act and in declining to make breach of a collective bargaining agreement an unfair labor practice manifested an intent to permit judicial remedies for violation of a collective bargaining agreement to operate concurrently with and in addition to any remedies which might exist under the NLRA for the same conduct. The enforcement of contract provisions by tribunals other than the Board does not entail the same danger of upsetting the federal statutory balance between the interest of labor and management that is present when another governmental body attempts to impose restraints not based upon mutual consent. Actually, where the parties have bargained for lawful contractual provisions and agreed upon a procedure for enforcing them, it promotes industrial peace and the private resolution of disputes to give effect to their arrangements.

Requiring the parties to utilize only an NLRB remedy, as the defendant insists upon here in regard to this "no-raiding agreement", would, on the other hand, defeat the contractual expectations, deprive them of whatever bargained for benefits the agreement was supposed to confer and thus impair the flexibility and autonomy of the arbitration process.

To deny the Court power to enforce contract provisions which could also give rise to unfair labor questions would tend to cripple the operation of private grievance procedures. If the Courts were unable to compel recalcitrant parties to submit to arbitration and to abide by the arbitrator's decision, compliance with arbitration agreements would become merely optional.

In the case of disputes over work assignments which might well result in a strike, there are additional reasons for allowing judicial enforcement of any contract rights. Section 8(b) (4) (D) is only potentially involved depending on future events. It gives no remedy to the union which believes that a contract which has been entered into has been violated. Jurisdiction of the Board under Section 10(k) is triggered only by a strike or a threat thereof for it provides that the Board shall have power to determine the dispute

"[w]henever it is charged that any person is engaged in an unfair labor practice within the meaning of paragraph 4(D) of section 8(b) * *."

So to foreclose the use of the courts or the arbitral forum in every work assignment dispute or no-raiding agreement dispute would run counter to NLRA policies by forcing the aggrieved union to resort to an unfair labor practice in order to redress what it believed to be the other union's breach of contract. This Court does not believe that was Congress' intention.

The Court having jurisdiction over the controversy and the facts and circumstances being undisputed as shown by the pleadings and the affidavits attached thereto, the motion of the plaintiff for summary judgment is hereby granted, and the defendant is hereby ordered to comply with impartial arbiter Cole's award.

The proper order and judgment will be prepared.

It is so ordered.