**NASHUA TYPOGRAPHICAL UNION, No. 365,**

v.

**TELEGRAPH PUBLISHING COMPANY.**

Civ. A. No. 73–192.

United States District Court, D. New Hampshire.

Oct. 12, 1973.

its collective bargaining agreement with the Company, it is entitled to this work.

Initial grievance procedures have not yielded a resolution of the problem, and the Union has brought this action to compel the Company to arbitrate the dispute. This court has jurisdiction under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185.

One claim made by the Company is that the work involved is not encompassed by the collective bargaining agreement. The relevant portions of the contract are Articles III and VII. See Pl's. Ex. A. Article III details the work covered by the Union's jurisdiction (Section 1) and provides that all such work "shall be performed only by" members of the bargaining unit (Section 2). Section 3 further provides:

> In the event of the introduction of any new equipment, machinery or process which replaces or serves as a substitute for, or evolution of, present composing equipment, machinery or process, the employer agrees to notify the Union of the intended introduction of such new equipment, machinery or process and to discuss jurisdiction of the work.

Article VII provides for a Joint Standing Committee consisting of two members from each party, to which Committee "shall be referred for settlement all questions which may arise as to the interpretation or application of any portion of this agreement, all violations thereof . . . ." If a dispute cannot be otherwise settled, then a Board of Arbitration may be convened to consider the matter "at the request of either party" (Section 3). Section 5, the only section to exclude any subject matter from the scope of arbitration, specifically excludes "[t]he General Laws of the International Typographical Union" and "local Union laws," but provides:

> . . . Nothing contained in this section shall be construed to limit or impair the stipulation of the parties that this agreement alone shall govern the relations between the parties on

Arthur J. Flamm, Flamm, Mason & Paven, Boston, Mass., Clyde R. Coolidge, Coolidge & Cullinane, Somersworth, N. H., for plaintiff.

John P. Griffith, Hamblett, Kerrigan, LaTourette & Lopez, Nashua, N. H., for defendant.

## MEMORANDUM ORDER AND OPINION

BOWNES, District Judge.

This case arises out of a change in printing operations at the Telegraph Publishing Company (hereinafter Company). The Company assigned some new work generated by the change to the Pressman's Union. The plaintiff, Nashua Typographical Union, No. 365 (hereinafter Union), claims that, under

all subjects concerning which any provision is made in the agreement, and that any dispute involving any subjects shall be determined in accordance with the procedure herein provided for the settlement of disputes and controversies.

With the above contract language in mind, the arbitrability of this dispute must be decided in accordance with the standards laid down by the Supreme Court:

Apart from matters that the parties specifically exclude, all of the questions on which the parties disagree must therefore come within the scope of the grievance and arbitration provisions of the collective agreement.

\* \* \* \* \* \*

. . . An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage. United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574 at 581–583, 80 S.Ct. 1347, at 1352, 4 L.Ed.2d 1409 (1960).

Since the subject matter of this dispute has not been specifically excluded by the parties and is arguably referred to in Section 3 of Article III, the contract must be construed as encompassing the work assignment dispute. Moreover, the Company has already participated in some grievance proceedings; and Company's counsel has admitted that a bona fide dispute over the interpretation of the collective bargaining agreement does exist.

The other claim urged by the Company is that it is unfair to force an employer into bilateral arbitration over what is essentially a tripartite dispute. The Company further maintains that in a work assignment dispute of this nature, the Union's only recourse is to strike or take a strike vote so that the Company can file an unfair labor prac-

tice charge and bring the entire dispute before the National Labor Relations Board which has jurisdiction over all three parties. Although this position is not without merit, it flies directly in the face of the long-established and well-documented judicial preference for arbitration of labor disputes. See the arbitration trilogy: United Steelworkers v. American Mfg. Co., 363 U.S. 564, 80 S. Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), and United States Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L. Ed.2d 1424 (1960).

Furthermore, Justice Douglas, while addressing himself to a problem very similar to the one in this case, has considered the very point urged by the Company:

Are we to assume that the regulatory scheme contains a hiatus, allowing no recourse to arbitration over work assignments between two unions but forcing the controversy into the strike stage before a remedy before the Board is available?

\* \* \* \* \* \*

Grievance arbitration is one method of settling disputes over work assignments; and it is commonly used, we are told. To be sure, only one of the two unions involved in the controversy has moved the state courts to compel arbitration. So unless the other union intervenes, an adjudication of the arbiter might not put an end to the dispute. Yet the arbitration may as a practical matter end the controversy or put into movement forces that will resolve it. Carey v. Westinghouse Electric Corp., 375 U.S. 261, 84 S.Ct. 401, at 405–406, 11 L.Ed.2d 320 (1964), at 264–265. See also Cuneo Eastern Press, Inc. v. Bookbinders & Bindery Women's Union, Local No. 2, 176 F. Supp. 956 (E.D.Pa.1959).

As in *Carey*, this dispute may be resolved through bilateral arbitration; and since an underlying policy of the

National Labor Relations Act is to foster resolution in the industrial, as opposed to the judicial, context, the parties should be given every chance to settle the matter voluntarily.[1]

For the above reasons, the plaintiff's motion for summary judgment is granted.

So ordered.

---

1. Note the solution of a similar problem in Columbia Broadcasting System v. American Recording & Broadcasting Assn., 414 F.2d 1326 (2nd Cir. 1969), where the employer, faced with bilateral arbitration over a work assignment dispute, invoked the arbitration clause in its contract with the second union and sued both unions under § 301 to compel consolidation of the two pending arbitrations. An order compelling tripartite arbitration was upheld by the Second Circuit.